[Civ. No. 21. Fifth Dist. Feb. 20, 1962.]

JOSEPH R. OCHINERO, Plaintiff and Appellant, v. FRED A. WERTZ et al., Defendants and Respondents.

Lawrence W. Young and Robert L. Young for Plaintiff and Appellant.

John R. Nixon for Defendants and Respondents.

STONE, J.—This is an appeal by plaintiff Ochinero from an order vacating the default of defendants Fred A. Wertz and Chester E. Wertz pursuant to motion under Code of Civil Procedure, section 473. The third defendant, Marion W. Irons, as to whom the motion was denied, has not appealed.

Defendant Chester Wertz, 63 years of age, farms in Stanislaus County, and his brother, Fred Wertz, aged 65, farms in Butte County. Their codefendant, Marion W. Irons, a self-styled businessman, prevailed upon them to invest in the trading stamp business in the San Joaquin Valley. Mr. Irons negotiated a contract for the three defendants to purchase the Valley Green Stamp Company from plaintiff. This action stems from that agreement. Copies of summons and complaint were served upon Chester Wertz September 19, 1960, and he turned them over to Irons, who was managing the Valley Green Stamp Company. Defendant Fred Wertz was served with summons and complaint on September 21, 1960, and he too turned the papers over to Irons. In each instance Irons agreed to get in touch with the plaintiff, to handle the matter and "straighten it out" for each defendant. On the other hand, each of the defendants Wertz admitted that he read both the summons and the complaint before delivering them to Irons. The Wertz Brothers continued with their farming activities, and left the lawsuit to be handled by Irons.

The record indicates that although Irons talked with plaintiff both in person and by telephone, he did little toward settling the dispute until near the end of the time for the Wertz Brothers to file an appearance. This was due primarily to his participation in a criminal action in Stanislaus County, Irons being the defendant. However, Irons alleged in his affidavit that prior to his becoming engrossed with his criminal trial, he discussed the instant action with the plaintiff, who told him not to worry and that the matter would be straightened out shortly. The record reflects, without contradiction, that on Friday, October 21, 1960, Irons called plaintiff in an effort to settle the litigation, and plaintiff suggested a meeting the following day, Saturday, October 22, with him and his attorneys. Irons and two other persons, who later were wit-

nesses at the hearing of the motion to set aside the default, met with plaintiff as requested. During the morning meeting plaintiff tried, without success, to call his attorneys. After lunch, the settlement discussion continued and plaintiff again attempted to call his attorneys, but without success. After additional settlement discussion, plaintiff suggested that Irons return the first part of the following week with defendant Fred Wertz for the purpose of settling the litigation.

The record discloses, however, that on Friday, October 21, the same day that plaintiff asked defendant Irons to meet with him, the attorneys had the clerk enter the default of defendant Fred Wertz. This, incidentally, was the first day that the default could have been entered.

On October 25, defendant Irons called plaintiff's counsel for an appointment, his purpose being a meeting to settle the litigation as suggested by plaintiff. Irons alleges that the attorney advised him that he did not want to talk, that he just wanted the money. Although the defaults of defendants Fred and Chester Wertz had been entered, this was not mentioned. On October 27, Irons and defendant Fred Wertz were advised by plaintiff to see his attorneys. Accordingly they called at the offices of the attorneys and were advised for the first time that defaults had been entered. Defendants secured the services of their present counsel the same day.

A default judgment was taken against each defendant individually for the sum of $25,108.94, together with $160.20 costs. Defendants moved under Code of Civil Procedure, section 473, to have the judgments set aside. Oral testimony was taken at the hearing and considered by the court in addition to the affidavits the substance of which has been heretofore related. The court took the matter under submission, and thereafter granted the motion as to defendants Chester E. Wertz and Fred A. Wertz, allowing each 15 days in which to answer. Plaintiff appeals from the order.

On this appeal plaintiff has the burden of showing that the trial court abused its discretion in setting aside the default judgment. (*Etchepare* v. *Ehmke,* 137 Cal.App.2d 508, 511 [290 P.2d 374].) Mr. Witkin, in his work, 3 California Procedure, Attack on Judgment in Trial Court, section 47, page 2098, comments as follows about Code of Civil Procedure, section 473, "This remedial statute is highly favored and is liberally applied to carry out the policy of permitting trial on the merits." (See authorities cited by Witkin.)

Plaintiff cites numerous cases in which various excuses or

kinds of justification for relief under section 473 are considered, and contends that the facts of this case do not come within the rationale of any of the excuses approved by California decisions. However, in the cited cases the person upon whom the defendant relied simply failed to act. There was no element of misreliance or excusable neglect or inadvertence which could be traced to the opposing party. Here defendant Irons negotiated with plaintiff in the interest of all the defendants. Negotiating alone would not be sufficient perhaps to justify setting aside or vacating a default, but we have the additional factor that on the very day the default of defendant Fred Wertz was entered by plaintiff's attorney, plaintiff himself requested defendant Irons to meet with him. The purpose of the meeting was to discuss a settlement and a disposition of the pending action. Furthermore, the following day plaintiff, in the presence of Irons, attempted to call his attorneys, both in the morning and in the afternoon. When the attorneys could not be reached, it was plaintiff who suggested to defendant Irons that another meeting be held the following week. During the interim, plaintiff's counsel entered the default of defendant Chester Wertz.

 It would appear that plaintiff failed to advise his attorneys that he was negotiating with defendants through Irons. It is equally apparent that the attorneys did not advise plaintiff that they were entering the defaults of the defendants. Thus, while plaintiff was negotiating, his attorneys were defaulting. No deceit was involved, the situation resulted from a lack of communication.

It is significant that the negotiations were carried on at the request of plaintiff, that is, it was he who suggested the time and the place of the meetings with defendant Irons. This evidence is of a substantial nature, it supports the order of the trial court, and it cannot be said that there was an abuse of discretion in setting aside the default judgments. In point is the case of *Stegge* v. *Wilkerson,* 189 Cal.App.2d 1 [10 Cal.Rptr. 867]. The parties were there in the process of negotiating when defendant's default was entered. Stressing that the negotiations were had between the parties, not counsel, the court said, at pages 4-5:

" 'There can be no doubt that a trial court may find excusable neglect or surprise where settlement negotiations are being had between counsel, and where there is an oral or implied understanding that no default will be taken without notice, . . .'

"Applying these well-settled principles to the instant case we are convinced that the trial court did not abuse its discretion in setting aside the default judgment. While the negotiations were carried on between the parties rather than through counsel, we think there is no difference in principle between the situation shown by the record in this case than that in the *Yarbrough* case. The court could well find that the negotiations lulled Wilkerson into a sense of security. It also should be noted that only 39 days elapsed between the time summons was served and the default judgment entered. It should also be noted that only six days elapsed before relief from default was sought. Clearly Wilkerson acted promptly after the default was entered. There was no abuse of discretion on the part of the trial court."

Plaintiff attacks the veracity of defendant Irons. He points out that during the period in question Irons was being tried in Stanislaus County upon felony charges. Plaintiff also questions the credibility of the defendants Wertz insofar as they claim to have relied upon a person of the character and integrity of Irons. Judging the credibility of witnesses, however, is the province of the trial court. (*La Jolla Casa deManana* v. *Hopkins,* 98 Cal.App.2d 339, 349 [219 P.2d 871].) The rule is the same whether the witness whose credibility is being judged gave his testimony orally or by way of affidavit. (*Griffith Co.* v. *San Diego College for Women,* 45 Cal.2d 501, 508 [289 P.2d 476, 47 A.L.R.2d 1349]; *Hodge Sheet Metal Products* v. *Palm Springs Riviera Hotel,* 189 Cal. App.2d 653, 658 [11 Cal.Rptr. 435].)

In *Pearson* v. *Pearson,* 179 Cal.App.2d 360 [3 Cal.Rptr. 839], the court considered the province of an Appellate Court when faced with a record reflecting conflicting testimony on a motion to set aside a default judgment, and succinctly stated the rule in the following language, at page 361: "It was the trial court's task to select the true from the false or half true statements that were placed before it; not ours."

Since the record reflects evidence of a substantial nature which supports the order of the trial court, we cannot say that the order vacating the default judgments constitutes an abuse of discretion.

The order is affirmed.

Conley, P. J., and Brown, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 18, 1962.