[Civ. No. 972.   Fifth Dist.   Oct. 31, 1968.]

RICHARD F. MARTIN et al., Plaintiffs and Respondents, v. DAVID L. TAYLOR et al., Defendants and Appellants.

Robert W. Tuttle for Defendants and Appellants.

Rowland, Paras & Clowdus and George C. Paras for Plaintiffs and Respondents.

STONE, Acting P. J.—Defendants appeal from an order denying their motion, made pursuant to section 473 of the Code of Civil Procedure, for an order vacating entry of default, and to set aside a default judgment. They also noticed a late appeal from the default judgment, which is hereby dismissed.

The record consists of a settled statement and exhibits certified by the trial judge to be true, in lieu of a reporter's transcript and a clerk's transcript. The complaint, seeking $27,758.96 alleged to be the reasonable value of work, labor and services performed by plaintiffs for defendants, was filed in Yolo County on February 8, 1966. Defendants were served with a copy of summons and complaint in Monterey County, their place of residence, on February 14. When they failed to appear in the action within 30 days thereafter, a default was taken and a default judgment was entered on March 18, 1966. A motion to set aside the default and the default judgment was filed September 15, 1966, three days short of the maximum six months' period allowed for the filing of such a motion under section 473.

Defendants assert that in denial their motion, the trial court abused its discretion.

A motion for relief from a default judgment is addressed to the sound discretion of the trial court, and its ruling thereon will not be reversed on appeal in the absence of a clear showing of an abuse of discretion. (*Weitz* v. *Yankosky,* 63 Cal.2d 849, 854 [48 Cal.Rptr. 620, 409 P.2d 700].) The burden of showing an abuse of discretion rests on the petitioner, here, the defendants. (*Ochinero* v. *Wertz,* 200 Cal.App. 2d 533, 535 [19 Cal.Rptr. 466].) "Mere mistake, inadvertence or neglect does not warrant relief unless, upon a consideration of all of the evidence, it is found to be excusable." (*Daher* v. *American Pipe & Constr. Co.,* 257 Cal.App. 2d 816, 820 [65 Cal.Rptr. 259].)

Section 473 provides that application for relief from default "must be made within a reasonable time, in no case exceeding six months" after such judgment is taken. It occasionally has been mistakenly assumed that if a motion for relief from a default is made within the six months' maxi-

mum allowed the sole question before the court is whether the movant's failure to appear in the action within the time required was due to his mistake, inadvertence, surprise or excusable neglect, as provided in section 473. However, there is an additional burden to be met by the moving party, as pointed out in *Smith* v. *Pelton Water Wheel Co.*, 151 Cal. 394, wherein the Supreme Court said, at page 397 [90 P. 934] : "Under this statute, in addition to being made within the six months' period, the application must be made within 'a reasonable time,' and what is a reasonable time in any case depends upon the circumstances of that particular case."

Thus the moving party seeking relief from default under section 473 faces two hurdles, and we turn to the first, whether defendants demonstrated that their failure to appear within 30 days after service of summons and complaint was due to "mistake, inadvertence, surprise or excusable neglect."

On January 13, 1966, plaintiffs billed defendants for the sum of $24,958.96, for land leveling services, reserving a claim for additional monies, and requested payment within 10 days. Defendants failed to respond, and plaintiffs filed this action in Yolo County on February 8, 1966. Defendants were served in Monterey County on February 14 with summons and a complaint which prayed for the sum of $27,758.96. On February 14, defendants forwarded their check in the amount of the original statement for $24,958.96, upon the condition it be accepted as payment in full. Plaintiffs returned the check by letter dated February 16, 1966, stating that it was returned on advice of counsel, and that the total claim was $27,758.96 together with accrued court costs in the sum of approximately $200. However, plaintiffs advised defendants they would dismiss the suit upon receiving the principal amount, $27,758.96, or they would accept $24,958.96 on account and litigate the question of the additional amount claimed.

On March 2, 1966, defendants consulted their attorney, Robert W. Tuttle, who requested them to obtain additional information with a view to filing a counterclaim. Tuttle did not contact either of the plaintiffs or their attorneys, or in any manner let them know he was acting on behalf of defendants. It is significant that he did not seek an extension of time for defendants to appear in the action, from either plaintiff's counsel or the court.

Plaintiffs, not hearing from defendants and unaware that

they were represented by attorney Tuttle, caused a default to be entered on March 18; a default judgment was entered the same day. On March 29, defendants conferred with Mr. Tuttle, and on March 30 he telephoned Mr. Paras, one of plaintiffs' attorneys, and learned that the default judgment had been entered.

Defendants contend that their failure to appear comes within the term "excusable neglect and mistake" in that plaintiffs' letter of February 16, concluding: "We will await word from you, or if you prefer, your attorneys should contact the offices of Rowland, Paras, and Clowdus, who are handling this for us," misled them to believe that plaintiffs would allow them a reasonable period of time to straighten out the matter, and that there was no urgency. The letter is defendants' only excuse for not communicating with the plaintiffs or, in accordance with the alternative suggestion in the letter, having their attorney communicate with plaintiffs' named attorney.

Defendants' contention that the letter implied they should have time to communicate with plaintiffs or have their attorney communicate, must be viewed in the light of circumstances existing when the letter was written. There had been a prior demand for payment; plaintiffs, after waiting approximately a month without receiving an answer, filed an action to enforce the demand. The response was tender of a lesser amount, which plaintiffs returned in the above-mentioned letter. When no reply was received by plaintiffs or their attorney for over 30 days after the letter was written, the default was entered. In the face of the demand letter, followed by the filing of a complaint seeking a large amount of money from defendants, it is difficult to say that the delay of defendants and their attorney in not appearing in the action within the time allowed by law was excusable under any of the grounds mentioned in section 473.

However, assuming, without deciding, that the trial court erred in not ruling that the failure to appear in the action within 30 days was justifiable within the purview of section 473, nonetheless defendants had a second hurdle to clear: the burden of showing that their delay in instituting proceedings to set aside the default judgment was excusable.

The chronology of events following Mr. Tuttle's learning by telephone on March 30 that a default judgment had been entered, is as follows: April 12, Mr. Tuttle addressed a letter to Mr. Paras, advising that he had written defendants recom-

mending that they pay the amount originally billed providing the default judgment be set aside, thus permitting the difference between the original amount claimed and the prayer of the complaint to be litigated; he added that, as yet, he had no response from his clients but would continue to contact them and that he was "fairly sure" Mr. Taylor would accept his recommendation. May 8, Mr. Tuttle advised Mr. Paras, by letter, that defendants might have some claim for an offset and he would like to file an answer but he was concerned because of the default judgment; he added: "In our first telephone conversation with you it was our understanding that you would agree to setting aside the present judgment, rather than our having to proceed with a motion to that effect." He enclosed a stipulation to set aside the default, for signature and return. May 12, Mr. Paras wrote to Mr. Tuttle that there was a misunderstanding as to the original telephone conversation in that he, Paras, was willing to stipulate to setting aside the default providing defendants paid the amount of the original billing; that he had said in the telephone conversation that he would have to think about and consider setting aside the judgment. He concluded his letter thus:

"Upon complete reflection, in fairness to my clients, I cannot stipulate to setting aside the default and then allowing you more time to file answers and the like. It is beginning to look as though Mr. Taylor is simply taking an undue advantage of a situation which he himself brought about. And I really have serious doubts as to whether the Court would grant a motion to set aside the default under the circumstances under which it was taken.

"I cannot, therefore, give up a valuable right which my clients have, at least without a fight.

"I suggest therefore that since Mr. Taylor wishes to pursue this course that you file a formal motion."

July 6, nearly two months later, Mr. Tuttle wrote to Mr. Paras stating that Mr. Taylor denied any liability for expense over the original amount of $24,958.96, that defendants had a counterclaim for alleged damages resulting from lack of full performance amounting to approximately $4,500, and that he, Tuttle, would recommend that defendants pay $20,500, the remainder to be resolved by negotiation or litigation, and if that arrangement was not acceptable, defendants would proceed with a motion to set aside the default.

Mr. Paras replied on July 13, pointing out that at one time

defendants had actually sent a check in the amount of the bill, $24,958.96, as payment in full, and advised Mr. Tuttle: ''I suggest therefore that you file the formal motion to set aside the default.''

Another two months went by before plaintiffs were served with notice of motion filed September 15, to set aside the default. As noted, this motion was filed just three days before the six months' period expired. It was accompanied by a single declaration, that of Mr. Tuttle, in which his principal reason for the delay in both failure to answer the complaint within 30 days and failure to move to set aside the default for nearly six months was that his law partner was vacationing in Europe, ''which caused the inevitable backlog of clientele appointments to arise, all to defendants detriment as it now appears, this being one of the major reasons for delay in the various conferences above noted taking place.''

The ''busy attorney'' reason for delay has been almost uniformly rejected by the courts as a ground for failure to seek relief from a default within a reasonable time. For example, in *Smith* v *Pelton Water Wheel Co., supra,* 151 Cal. 394, the delay was only four months—the defendant pleaded that his attorney was ill for over two months and under the pressure of ''other business'' for some weeks thereafter—yet the court held the reason was insufficient ground for granting relief under section 473. In *Schwartz* v. *Smookler,* 202 Cal. App.2d 76 [20 Cal.Rptr. 507], the defendant delayed moving to set aside a default for three and a half months and the attorney alleged ''pressure of other business in my office.'' The court held this did not constitute legal justification for the delay.

The reason ''press of business'' is not usually accepted as a ground for relief under section 473 is found in *Willett* v. *Schmeister Mfg. Co.,* 80 Cal.App. 337, at page 340 [251 P. 932] : ''Nor is unusual press of business a legal excuse. To accept this as a legal justification for the failure to comply with the statute would be to discourage diligence in the prosecution of appeals and establish a precedent that might lead to vexatious delays.''

Moreover, there is some indication here that defendants themselves were inexcusably negligent. With full knowledge of the controversy and that a default judgment had been entered against them, they left for the entire month of August, keeping themselves unavailable to their attorney and not getting their mail during that time. The trial court also had

before it a letter dated September 6, from Mr. Tuttle to defendants, urging them to take action and to pay his retainer so he could proceed with a motion for relief. It would appear that nearly six months after the default had been entered, defendants, in addition to negligently failing to remain in communication with him, had not paid their attorney to take action.

The trial judge incorporated the following memorandum in his order denying the motion to set aside the default: "The case of *Benjamin* v. *Dalmo Mfg. Co.*, 31 Cal.2d 523 [190 P.2d 593] is clear authority for the court's decision. In fact, it is so much in point that the Court cannot feel free to do other than deny the motion. Defendants not only slumbered on their rights, but actually appear to have purposely ignored them, if such they ever had. The grounds for setting aside a default judgment do not appear. It would appear that even defendants' attorney could not succeed in getting them to move. At any rate, the affidavits show that there would be little, if any, rights to be asserted. To allow defendants to now litigate a minimal part of the judgment would be unjust to plaintiffs at this time."

The reasoning of the trial judge is supported by the record and we cannot say that the order denying relief constitutes an abuse of discretion.

The order is affirmed.

Gargano, J., concurred.