[Civ. No. 32316.   Second Dist., Div. Five.   Feb. 27, 1969.]

TRANSIT ADS, INCORPORATED, Plaintiff and Appellant, v. TANNER MOTOR LIVERY, LTD., Defendant and Respondent.

Gordon & Weinberg, Gordon, Weinberg & Gordon and Richard E. Posell for Plaintiff and Appellant.

Richard L. Crail for Defendant and Respondent.

AISO, J.—Plaintiff Transit Ads, Incorporated, a California corporation, appeals from an order setting aside an entry of default and a default judgment which plaintiff obtained against the defendant Tanner Motor Livery, Ltd., for $11,275 and $23.55 costs, in an action for breach of contract.

Upon reviewing the record and applicable rules of law, we have concluded that the order was granted in abuse of discretion and that it should be reversed.

## I.

"It is well settled that a motion for relief from default under Code of Civil Procedure section 473 is addressed to the sound discretion of the trial court and that its ruling thereon will not be disturbed on appeal in the absence of a clear showing of abuse of discretion." (*Lynch* v. *Spilman* (1967) 67 Cal.2d 251, 257 [62 Cal.Rptr. 12, 431 P.2d 636], and cases there cited.) The burden of showing an abuse of discretion is upon the appellant. (*Hodge Sheet Metal Products* v. *Palm Springs Riviera Hotel* (1961) 189 Cal.App. 2d 653, 656 [11 Cal.Rptr. 435]; *Ochinero* v. *Wertz* (1962) 200 Cal.App.2d 533, 535 [19 Cal.Rptr. 466].)

" 'The discretion intended, however, is not a capricious or arbitrary discretion, but an impartial discretion, guided and controlled in its exercise by fixed legal principles. It is not a mental discretion, to be exercised *ex gratia,* but a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the

ends of substantial justice. In a plain case this discretion has no office to perform, and its exercise is limited to doubtful cases, where an impartial mind hesitates. If it be doubted whether the excuse offered is sufficient or not, or whether the defense set up is with or without merit *in foro legis,* when examined under those rules of law by which Judges are guided to a conclusion, the judgment of the Court below will not be disturbed. If, on the contrary, we are satisfied beyond a reasonable doubt that the Court below has come to an erroneous conclusion, the party complaining of the error is as much entitled to a reversal in a case like the present as in any other.'' (*Benjamin* v. *Dalmo Mfg. Co.* (1948) 31 Cal.2d 523, 526 [190 P.2d 593], quoting from *Bailey* v. *Taaffe* (1866) 29 Cal. 422, 424 with approval.)

"While this section [Code Civ. Proc., § 473] is remedial and to be liberally construed [citations] the moving party must show 'mistake, inadvertence, surprise or excusable neglect.' . . . The burden of proof on such a motion is on the moving party who must establish his position by a preponderance of the evidence.'' (*Luz* v. *Lopes* (1960) 55 Cal.2d 54, 62 [10 Cal.Rptr. 161, 358 P.2d 289].)

The statute itself requires that the person who seeks relief upon the theory of excusable neglect must show that the neglect was excusable. (*Luz* v. *Lopes* (1960) *supra,* 55 Cal.2d 54; *Martin* v. *Taylor* (1968) 267 Cal.App.2d 112, 114 [72 Cal.Rptr. 847].) The neglect to be excusable must be an act or omission which might have been committed by a reasonably prudent person under the same circumstances. (*Kooper* v. *King* (1961) 195 Cal.App.2d 621, 626 [15 Cal.Rptr. 848]; *Hodge Sheet Metal Products* v. *Palm Springs Riviera Hotel* (1961) *supra,* 189 Cal.App.2d 653, 657; *Alderman* v. *Jacobs* (1954) 128 Cal.App.2d 273, 276 [274 P.2d 930].) Moreover. the excusable neglect must be the *actual cause of the defaul'.* (*Price* v. *Hibbs* (1964) 225 Cal.App.2d 209, 217 [37 Cal.Rptr. 270]; *Hodge Sheet Metal Products* v. *Palm Springs Riviera Hotel* (1961) *supra.*)

It was held in *Kalmus* v. *Kalmus* (1951) 103 Cal.App.2d 405, 414 [230 P.2d 57], where a party asked for a continuance of trial upon her representation that she was too ill to travel across country to appear for trial, that " [i]llness of a party does not *ipso facto* require the granting of the motion. . . . Because of the necessity for orderly, prompt and effective disposition of litigation and the loss and hardship to the

parties to an action . . . it becomes and is a part of the bounden duty of the trial judge, in the absence of some weighty reason to the contrary, to insist upon cases being heard and determined with as great promptness as the exigencies of the case will permit.'' Similar considerations are present in the granting or denying of relief from default for failure to file responsive pleadings promptly.

■ Illness of counsel which actually disables him from timely compliance with the statutory rules of procedure constitutes excusable neglect if he moves promptly for relief as soon as his disability terminates or attenuates to the extent that a reasonable man under similar conditions would take action for relief. (*Schmitt* v. *Joe Morton Lbr. Co.* (1955) 137 Cal.App.2d 403, 404 [290 P.2d 32]; cf. *Arnke* v. *Lazzari Fuel Co.* (1962) 202 Cal.App.2d 278, 282 [20 Cal.Rptr. 762].) On the other hand, it has been held that illness occurring after the time for filing answer has expired without explanation for failure to answer within the regular statutory time does not constitute excusable neglect. (*Youngman* v. *Tonner* (1890) 82 Cal. 611, 612 [23 P. 120].) If the illness is such that there was no opportunity to obtain substitute counsel, it is excusable (*Van Dyke* v. *MacMillan* (1958) 162 Cal.App.2d 594, 599 [328 P.2d 215]), but contrariwise if there is opportunity to obtain substitute counsel to prevent the default from occurring (*Thomas* v. *Toppins* (1928) 206 Cal. 18, 19 [272 P. 1042]).[1]

■ Discretion is abused in granting relief from default if the moving party's supporting affidavit or declaration fails to set forth facts sufficient to constitute grounds for relief. (*Ro-*

[1]Also cf. *Smith* v. *Pelton Water Wheel Co.* (1907) 151 Cal. 394, 397 [90 P. 934]. In an action pending in Los Angeles County, the attorney in charge of the case was a San Francisco lawyer. He had associated a Los Angeles lawyer to assist him, much in the nature that Faucett came into the picture in this case, although the association apparently antedated the illness of the chief attorney. The court held the following facts set forth in an affidavit insufficient to excuse lack of diligence in moving for relief: ''The only excuse given for the delay in instituting proceedings to vacate the default and judgment was that given by the senior member of the San Francisco firm to the effect that for over two months after learning of the default and judgment he was suffering from ill-health, and was not in regular attendance at his office, and could only attend to his business occasionally; that thereafter he was engaged to the utmost of his capacity in court work and other business that needed prompt attention; that his partner was not familiar with the facts and was not in the habit of handling litigation of this character, and that ever since the entry of default and judgment he had been in frequent correspondence with his associate in Los Angeles, and from time to time had explained to him that the papers for the motion were in course of preparation, and why they were delayed.''

*mer, O'Connor & Co.* v. *Huffman* (1959) 171 Cal.App.2d 342, 347 [341 P.2d 62], and cases cited.) ▮ Affidavits or declarations in support of such a motion may disclose inexcusable carelessness by silence as well as by facts affirmatively set forth. (*Ray Kizer Constr. Co.* v. *Young* (1968) 257 Cal. App.2d 766, 768-769 [65 Cal.Rptr. 267].) ''The non-production of evidence that would naturally have been produced by an honest and therefore fearless claimant permits the inference that its *tenor is unfavorable to the party's cause.*'' (Witkin, Cal. Evidence (2d ed., 1966) p. 1044, quoting from *Shapiro* v. *Equitable Life Assur. Soc.* (1946) 76 Cal.App.2d 75, 94 [172 P.2d 725]; cf. *Rambush* v. *Rambush* (1968) 267 Cal.App.2d 734, 747 [73 Cal.Rptr. 268].)

▮ It is also an abuse of discretion to grant relief where the supporting affidavit is devoid of any explanation for a failure to move for relief within a reasonable period of time following knowledge of the default. (*Schwartz* v. *Smookler* (1962) 202 Cal.App.2d 76, 83 [20 Cal.Rptr. 507].) ▮ Unusual pressure of business by itself is not a legitimate excuse either for granting relief (*Fairfield* v. *Ahlstrom* (1962) 206 Cal.App.2d 590, 592 [24 Cal.Rptr. 70]) or for delay in seeking timely relief from default. (*Martin* v. *Taylor* (1968) *supra*, 267 Cal.App.2d 112, 117; *Schwartz* v. *Smookler*, *supra*.)

▮ The purpose of granting relief from a default judgment under section 473 of the Code of Civil Procedure is ''to give to the party claiming in good faith to have a substantial defense to the action an opportunity to present it.'' (*Nicoll* v. *Weldon* (1900) 130 Cal. 666, 667 [63 P. 63].) ▮ Case law, therefore, requires the party seeking relief to accompany his notice of motion for relief with an affidavit of merits or verified pleading which sets up a valid defense. '' 'Before the trial court can be called upon to exercise its discretion in relieving from a default judgment, . . . the party in default must show not only a good excuse for his default, but also, that he has a meritorious defense to the action.' '' (*Lynch* v. *Spilman* (1967) *supra*, 67 Cal.2d 251, 256, quoting from *Beard* v. *Beard* (1940) 16 Cal.2d 645, 648 [107 P.2d 385], with approval.) Before one may seek refuge in the policy that the law favors a hearing on the merits wherever possible, it must be made to appear that a substantial defense to the action can be made. (Cf. *Weitz* v. *Yankosky* (1966) 63 Cal.2d 849, 854 [48 Cal.Rptr. 620, 409 P.2d 700].) The rule has also

been stated in the following language: It must be "'"made to appear *prima facie* that a different result would probably be reached'" (*Skolsky* v. *Electronovision Productions, Inc.* (1967) 254 Cal.App.2d 246, 252 [62 Cal.Rptr. 91]; *Bethlahmy* v. *Customcraft Industries, Inc.* (1961) 192 Cal.App.2d 308, 310 [13 Cal.Rptr. 310]) or that a different result may possibly be reached (*H. A. Pulaski, Inc.* v. *Abbey Contractor Specialties, Inc.* (1969) 268 Cal.App.2d 883, 887 [74 Cal.Rptr. 590]; see also *A & S Air Conditioning* v. *John J. Moore Co.* (1960) 184 Cal.App.2d 617, 621 [7 Cal.Rptr. 592]) if the default judgment were set aside. It has been held that a default judgment of dismissal in favor of a defendant should not be reopened via relief under this section (Code Civ. Proc., § 473) to permit the filing of an amended complaint for failure to state a cause of action. (*Sunru Chang* v. *Carson Estate Co.* (1959) 168 Cal.App.2d 110, 113 [335 P.2d 697].)

The policy that the law favors trying all cases and controversies upon their merits should not be prostituted to permit the slovenly practice of law or to relieve courts of the duty of scrutinizing carefully the affidavits or declarations filed in support of motions for relief to ascertain whether they set forth, with adequate particularity, grounds for relief.[2] When inexcusable neglect is condoned even tacitly by the courts, they themselves unwittingly become instruments undermining the orderly process of the law. (Cf. Witkin, *Four Years of the Rules on Appeal* (1947) 35 Cal.L.Rev. 477, 507.) ██ "(T)he law does not look with favor upon setting aside defaults or judgments resulting from inexcusable inadvertence, surprise or neglect of attorneys in the performance of their duties to their clients." (*People's Finance & Thrift Co.* v. *Phoenix Assur. Co.* (1930) 104 Cal.App. 334, 336 [285 P. 857].)

## II.

The undisputed facts as established by the record on appeal, by the declaration of attorney Richard L. Crail (hereafter "Crail") accompanying his notice of motion for relief from default and default judgment, filed April 25, 1966, by the declaration of plaintiff's counsel, Gordon and Weinberg by Donald M. Lasser (hereafter merely "Lasser") in opposition to the grant of the motion, filed April 29, 1966, and by

---

[2] "There are no talismanic words that can avoid the process of judgment." (*Universal Camera Corp.* v. *NLRB* (1951) Frankfurter, J. speaking for court, 340 U.S. 474, 489 [95 L.Ed. 456, 468, 71 S.Ct. 456, 465].)

Crail's supplemental declaration and a declaration of attorney Jack H. Faucett (hereafter "Faucett") in support of the motion, filed May 10, 1966, are as follows:

Plaintiff Transit Ads, Incorporated, filed this action against the defendant Tanner Motor Livery, Ltd. (hereafter "Tanner") on August 4, 1965, alleging a breach of contract granting plaintiff the exclusive right to place advertising within Tanner's buses for a period of three years from March 10, 1964, in that, unknown to the plaintiff, Tanner had granted such rights previously thereto to an Evelyn McKenzie covering a period which would carry through to December 31, 1964, and in that such contract prevented plaintiff from enjoying the benefits of its contract with defendant Tanner.

Tanner was served with summons and complaint on August 6, 1965.

On or about August 16, 1965, Crail called Lasser informing Lasser that he (Crail) was representing Tanner and that he desired an extension of time within which to answer the complaint. Lasser granted an extension, requesting Crail to confirm the arrangement by letter. Crail did not write, so Lasser wrote Crail on September 7, 1965, giving Crail another extension to September 20, 1965. A further extension to September 27, 1965, was granted. On October 19, 1965, Lasser wrote to Crail advising him that unless defendant's answer were filed within one week from the date Crail received the letter, a default would be entered against Tanner. Crail received the letter October 21, 1965, by certified mail.

No answer having been filed by November 15, 1965, Lasser on that date filed his request to the clerk for an entry of default. A default was entered on November 17, 1965.

About a month thereafter (on December 13, 1965) Crail called Lasser's office. Since Lasser was out of the office, Crail left a message asking Lasser to call him. Lasser returned the call on December 14, 1965. This time, Crail was not in his office. Later the same day (December 14, 1965) Crail called Lasser and informed him that he (Crail) had been very ill and that he had requested another attorney, Faucett, to prepare the answer, that he would make every effort to have the answer in Lasser's office that day or the next, and asked Lasser to agree to the entry of default being vacated. Lasser agreed to vacate the entry of default if defendant's answer were filed that date, with service of a copy upon Lasser.

Crail states, without assigning the reason therefor, that he

was unable to contact Faucett until the week before Christmas. Faucett declares that it was the latter part of December 1966 [*sic*], just before the Christmas holidays, when the file was handed to him. Crail never advised Faucett of the urgency of getting the answer drafted, served, and filed until his meeting with Faucett in February 1966.

Faucett took the file to his office, which is some distance from Crail's, and read all of the documents and papers therein. Faucett prepared a longhand draft of the answer setting up general denials to the averments of plaintiff's complaint, but he could not ascertain facts necessary to set up that which he characterizes as a proper affirmative defense.

Crail and Faucett made an appointment to get together between Christmas and New Year's to complete the drafting of the answer. Crail did not keep the appointment, advising Faucett that he was unable to honor the appointment due to his physical condition.

Another appointment was set up for a Saturday morning early in January 1966, but Crail again was unable to keep it due to the condition of his health.

Because of the pressures of his own practice, Faucett inadvertently laid aside the file until February when Faucett and Crail met to finalize the answer. It was at this meeting that Faucett was first apprised of the urgency of the matter.

Not having heard from Crail, who did not contact Lasser after the December 14, 1965, conversation until the following March 15, 1966, Lasser proved up his default on February 1, 1966. Judgment was rendered against the defendant for $11,275 and $23.55 costs on February 15, 1966, and was entered in the judgment book the following day, February 16, 1966.

Uninformed that a default judgment had already been obtained and entered, Faucett completed the answer on March 16, 1966, and then telephoned Lasser's office. Attorney Stephen M. Lachs answered and stated that Lasser was in Europe at the time. Faucett asked if they (plaintiff's counsel) would stipulate to a vacation of the entry of default and consent to the answer being filed at that time. Lachs informed Faucett that a default judgment had already been entered, but that Lasser was attempting to have the judgment modified because Lasser thought the sum awarded was insufficient, and that Lasser had filed points and authorities with the court for that purpose. Lachs informed Faucett that a note on the file

placed by Lasser directed that no action be taken until Lasser returned from Europe, and that Lasser was expected back around April 1, 1966.

On March 30, 1966, Lasser contacted both Crail and Faucett, both of whom asked Lasser to agree to a vacation of the default and the default judgment. Lasser indicated that he could not do so without his client's consent, but would check with his client.

On April 12, 1966, Faucett and Crail phoned Lasser to ascertain whether Lasser's client had reconsidered the matter. Lasser replied that the client would not permit a vacation of the judgment, but would be amenable to talking settlement.

Crail then filed his notice of motion for relief from default and default judgment on April 25, 1966. The declarations earlier referred to were filed by Crail, Lasser, and Faucett, respectively. On May 12, 1966, the trial court granted relief as prayed for and permitted the proposed answer to be filed and to be deemed served the same date. Plaintiff appealed from that order.

No affidavit of merits was filed. The verified answer is short, two and one-fourth pages (32-line legal paper). It contains only denials, except for an affirmative defense which admits the making of the contract with plaintiff, but alleges that defendant Tanner believed that it was not under an exclusive advertising contract with anyone else except upon a month-to-month basis, whereas in fact it was under an exclusive contract running until December 31, 1964, with Evelyn McKenzie. It avers, without setting forth any other facts, that this was a mutual mistake on the part of both parties.

### III.

The only valid basis for relief from default on grounds of excusable neglect is Crail's claim that he was physically disabled from compliance with the normal procedural requirements because of his illness. We, therefore, set forth his statements in this regard.

In his original declaration, Crail states: ''that he was incapicatated [sic] intermittently during this period and was relying upon the statement that the plaintiff's counsel would set aside the default upon presentation of an answer and further relying upon the undersigned's belief that Mr. Faucett would file the answer being unaware at the time that he had insufficient facts to proceed therewith.''

In his supplemental declaration, he describes the nature of his illness thusly: "My weight during the latter part of September, 1965, had reached 300 pounds, which for me was extremely overweight. This had adverse effects upon my general condition and I sought the services of a 'diet doctor' who placed me upon a rigorous diet plus extensive medication, designed to achieve fast weight reduction. The treatment was successful in this respect that I lost 60 pounds over the first sixty days of the treatment, however, the medication adversely effected [*sic*] my general mental, and physical condition to the extent that I was unable to properly attend to my law practice. I was absent from the office for long periods of time and was only intermittently able to go to the office. From the middle of November to the end of January I was without secretarial help and was obliged to rely on my answering service for secretarial service. During this time I was unable to keep my appointments with Mr. Faucett, who was unaware of the urgency of this matter. . . . The effect of the medical treatment which I underwent was to cause me to be nauseated, dizzy, in a general weakened condition, which prevented me from doing paper work or working at a desk. The effect of the medication on my physical condition as well as my mental condition was compounded by the fact that I was under the pressure of knowing that I was not properly able to attend to my law practice, resulting in a high state of nervousness accompanied by emotional problems. As a result of the foregoing, Mr. Faucett has had to assist me in several cases during this period. Mr. Faucett's contact with Mr. Lasser's office during the month of March was in an attempt to clear up this problem which was one of several."

## IV.

While one's natural sympathies incline towards a sole practitioner who becomes disabled from illness, rendering him incapable of carrying on his normal practice, we are enjoined that the discretion in granting relief in this type of situation is not *ex gratia*. (*Benjamin* v. *Dalmo Mfg. Co.* (1948) *supra*, 31 Cal.2d 523, 526.)     We, therefore, examine the nature of the illness as described and then consider if the illness was so disabling that the neglect consisted only of acts or omissions of a kind which a reasonably prudent sole practitioner caught in similar circumstances would commit. If the neglect consisted of both excusable and inexcusable acts or omissions, was it the excusable portion of

the neglect or the inexcusable portion that caused the default?

Crail's declaration does not state who the diet doctor was or whether he was confined to bed at home or in any hospital. A doctor's declaration was not presented. Crail's declaration does not state whether his condition was one which was developing gradually at the time he accepted responsibility for the case, or a supervening one which developed suddenly at the end of September. The facts stated show that even before going on the diet, Crail did not think enough of Lasser's favor of an extension of time to write the letter of confirmation requested.

Crail was able to go to his office at least intermittently. He made no effort to contact his client, Tanner Motor Livery, Ltd., to inform it of his condition and to explore possibilities of its obtaining another counsel to take over the responsibility for handling the case. No showing was made that Tanner, which runs the Gray Line in Southern California, was an entity so impecunious that its financial condition would not permit its retaining another counsel if Crail were incapacitated due to illness.

Crail's declarations also disclose that he had attorney Faucett available to assist him. He sets forth no impediment to his contacting Faucett by telephone. He apparently had the ability to pull files from his office. Why did he not contact Faucett earlier, and when he did, why did he not inform Faucett of the urgency of filing the answer? No reason is given for the time lapse in contacting Faucett between December 14 and just before Christmas. Would not a reasonably prudent attorney in Crail's position have contacted either or both Lasser and Faucett periodically after his conversation with Lasser on December 14, 1965? Had Crail advised Faucett of the emergency, Faucett could have filed an answer with just denials to prevent the default. Amendments to pleadings are liberally granted and therefore such an answer could have been amended after filing. Faucett's delict in not contacting Crail due to inadvertence engendered by the pressure of his own practice, while understandable, was not excusable neglect. (*Fairfield* v. *Ahlstrom* (1962) *supra,* 206 Cal.App.2d 590, 592.) Even by Crail's own words, Lasser was at all times "out of courtesy to counsel . . . liberal in further extending time to answer" after the grant of the first extension. Why did he not check with Faucett and then contact Lasser to explain Faucett's predicament, if, in fact, he was in a predicament over an affirmative defense? There is no showing

that disabling illness, and not inexcusable neglect, was the real cause for the default.

As to the timeliness of Crail and Faucett in moving for relief from default, under the circumstances of this case the trial court's implied finding that an unreasonable period of time had not elapsed from discovery of the entry of the default judgment, did not constitute an abuse of discretion.

However, the fact that no affidavit of merits was filed with the moving papers is a glaring omission, absent a verified pleading that can be treated as a substitute therefor. This does not appear to have been specifically raised by Lasser in the trial court. It is further uncertain whether plaintiff's reference in its brief to the answer filed is to call our attention to the fact that it does not constitute a showing that defendant Tanner has a bona fide defense. However, appellate courts cannot avoid noticing pleadings which have no legal validity. (*Sunru Chang* v. *Carson Estate Co.* (1959) *supra*, 168 Cal.App.2d 110, 113.) The answer filed in this case with the motion is tantamount to an admission of liability, and that the denials, except as to the amount of damages, are sham and frivolous. We feel that insufficient facts are alleged in the affirmative defense to support the proposition that the mistake, if any, was mutual. Furthermore, to constitute a valid defense to a contract a mistake of fact must not have been caused by the neglect of a legal duty on the part of the person claiming mistake. (Civ. Code, § 1577, subd. 1;[3] *Reid* v. *Landon* (1958) 166 Cal.App.2d 476, 482 [333 P.2d 432] ; *Mesmer* v. *White* (1953) 121 Cal.App.2d 665, 674 [264 P.2d 60].) No facts excusing defendant Tanner from ignorance of its pre-existing contract obligations were pleaded. There was, therefore, no prima facie showing by way of affidavit or verified pleading that a more favorable result would possibly be obtained by setting aside the default and default judgment, either as to liability or as to damages.

Considering the foregoing circumstances and the incomplete showing made by the party seeking relief from default, the granting of the motion was an abuse of discretion.

The order vacating default judgment and entry of default is reversed.

Kaus, P. J., and Reppy, J., concurred.

---

[3] Civ. Code, § 1577: "Mistake of fact is a mistake, not caused by the neglect of a legal duty on the part of the person making the mistake, and consisting in: 1. An unconscious ignorance or forgetfulness of a fact past or present, material to the contract; . . . ."