Filed 8/10/21  Estate of Hennion CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| Estate of CHARLES EDUARD HENNION, Deceased. | A161257 (Napa County Super. Ct. No. 17PR000251) |
| ERIK HENNION et al. Petitioners and Respondents, v. STEVEN R. HENNION, Objector and Appellant. | |

Steven Hennion appeals from an order denying his motion to set aside a judgment in a trust and estate action.  He argues the ruling was an abuse of discretion because his failure to attend court hearings was excusable neglect—he relied on a superior court clerk's representation regarding the status of the case and believed the cases were dismissed.  He also argues the judgment is void because he did not have any notice of the proceedings even though the trial court dispensed with notice and further determined he was evading service.  We disagree and affirm.

1

## FACTUAL AND PROCEDURAL BACKGROUND

### I.     Estate and Trust Petitions

Charles Hennion had five sons, Steven Hennion, Andrew Hennion, Erik Hennion, Michael Hennion, and Ronald Hennion.[1]  Charles passed away in 2017 and the same year, Andrew filed a petition to administer Charles's estate (Estate Petition).  Steven objected, claiming their father had a living trust at the time of his death and a probate proceeding was not proper.  A written, unsigned trust, entitled Hennion Living Trust, named Steven as the successor trust manager.

While represented by counsel, Steven filed two additional petitions—a June 2018 petition for an order confirming the existence of a trust (Trust Petition) and an October 2018 petition to determine title, to require transfer of real and personal property, and seeking a determination of elder abuse. Michael filed an objection to the Trust Petition and sought affirmative relief.

Andrew dismissed the Estate Petition in October 2018,[2] although Steven's objection regarding the trust remained open.  Steven later acting in pro per dismissed his two petitions in June 2019.

### II.    Steven's Failure to Appear at Hearings and Notices of Change of Address

Beginning in June 2019, the trial court held a series of hearings regarding the estate case in which Steven did not appear.  For example, Steven failed to appear at a mandatory settlement conference on June 27, 2019.  As a result, the trial court ordered Steven to appear at an August 1,

---

[1] We refer to the members of the Hennion family by their first names for clarity, no disrespect intended.

[2] Andrew filed a request to dismiss the Estate Petition on October 4, 2018.  The court granted his request the following day.

2

2019, hearing and explain why he failed to attend the mandatory settlement conference on the estate case. One day later, Steven filed a notice of change of address from his Napa address, listing a telephone number and a temporary address in Enid, Oklahoma.

Although he did not appear at the August 1, 2019, hearing, Steven submitted a declaration stating "[t]here is no reason for me to appear . . . being the case has been dismissed, including the cases consolidated with this case." At that hearing, the trial court continued the matter to later in August "to address the dismissal which may have been improper" and continued the order to show cause against Steven. Four days later, Steven filed another notice of change of address. The notice, however, stated he left the Oklahoma address, he was currently on the road, and he did not have a new address to provide the court. The notice did not include a telephone number or an email address through which Steven could be contacted.

Steven failed to appear at the August hearing on the trial court's own motion to set aside the dismissal and the order to show cause. At that hearing, the court determined that Michael's request for affirmative relief in his objection to the dismissed Trust Petition was a surviving issue and construed it as a new petition.[3] The court then scheduled a hearing on the order to show cause and for case management for October 30, 2019.

Before the October hearing, the trial court mailed notices of hearing to Steven's Napa and Oklahoma addresses. The notices sent to the Oklahoma

---

[3] Although Steven had dismissed his petition, this new petition based on Michael's objection was still part of the proceeding established by the Trust Petition. We therefore continue to refer to the new petition as the Trust Petition.

3

address were returned as undeliverable—Steven had already left this location and his change of address notice did not contain an address or telephone number to contact him.

## III. Judgment

On August 23, 2019, Erik filed a petition to remove Steven as successor trust manager, for breach of trust, and to reform the trust (Removal Petition)—a petition that was later consolidated with the Trust Petition and are the central petitions at issue in this appeal. The Removal Petition, as relevant here, alleged Charles Hennion intended to distribute real property at 1527 Juanita Street, Napa, California to Erik and Michael— 40% interest to Michael and 60% interest to Erik. However in a later petition,[4] Erik alleged that on September 10, Steven improperly conveyed the house on Juanita Street to his son, Chris Hennion.

On seven separate occasions at different times of the day, licensed process servers attempted to personally serve Steven with the Removal Petition at Steven's Napa address. No one ever answered the door, the lights were not on, and there were no vehicles in the driveway. On three different dates, the process server noted that packages and an envelope bearing Steven's name and address had been delivered to Steven's house but were removed from the front porch between service attempts. Personal service at Steven's Oklahoma address also failed. Efforts to locate Steven included

---

[4] While this appeal was pending, we partially granted Erik's unopposed motion to augment the record with petitions and orders related to this case. We deferred ruling on whether to augment the record with this October 24, 2019, Petition to Determine Ownership of Trust Property [Prob. Code 850]; Breach of Trust; Injunctive Relief; Constructive Trust. We now grant Erik's request, and that petition, identified as a related case, and its exhibits are part of the record on appeal.

searching for him through social media platforms, internet search engines, and an Oklahoma county recorder website. Erik also determined Steven's daughter lived at Steven's Oklahoma address, but did not contact her because he thought it inappropriate. Erik and his counsel filed declarations detailing these unsuccessful efforts and applied ex parte for an order to dispense with notice to Steven. Erik's counsel also attempted to contact Steven by telephone before the hearing on the ex parte application and left him a message advising him of the hearing. At the hearing on the ex parte application, Steven did not appear, and the trial court dispensed with notice to Steven and set the hearing on the Removal Petition for October 30, 2019.

At the October 30th hearing, the trial court removed Steven as trust manager and appointed Erik as his successor. After an additional evidentiary hearing on reforming the trust, surcharges, and damages, the court entered a judgment confirming the 1527 Juanita Street property was distributed to Erik and Michael. It also ordered Steven to pay the trust $91,000.00 in lost rental income and $1,980.72 in interest and penalties based on Steven's failure to pay outstanding property taxes for the 1527 Juanita Street property. He was also ordered to pay $98,549.74 for his brothers' attorney fees and costs. Steven did not appear at these hearings because, as the trial court noted, a prior judge dispensed with providing notice to Steven since he appeared to be evading service.

IV. **Motion to Set Aside the Judgment**

In March 2020, Steven's attorney, retained for a related matter, discovered that the judgment had been entered against Steven. Steven moved to set it aside, arguing that he was never notified of any continued court proceedings, and that his failure to attend hearings was excusable because he relied on representations by a court clerk that the cases were

5

dismissed. The trial court disagreed, noting its prior finding that Steven was evading service. It concluded that Steven "decided to make himself unlocatable during a time period when he was aware that many disputes regarding the parents' estate/trust were unresolved."

## DISCUSSION

### I. Motion to Set Aside the Judgment

Steven contends his failure to attend the court proceedings was the result of excusable neglect since he relied on a superior court clerk's statements that the trust and estate cases were closed. He argues the trial court abused its discretion by denying him relief from the judgment. We disagree.

Code of Civil Procedure section 473 authorizes the court to relieve a party from a judgment if a party demonstrates it was the result of mistake, inadvertence, surprise, or excusable neglect. (Civ. Proc. Code,[5] § 473, subd. (b); *Parage v. Couedel* (1997) 60 Cal.App.4th 1037, 1042.) We review a trial court's denial of a motion to set aside a judgment for abuse of discretion. (*Zamora v. Clayborn Contracting Group, Inc.* (2002) 28 Cal.4th 249, 257.) But because the law favors dispositions on the merits, we scrutinize any order denying section 473 relief more carefully, with doubts in applying section 473 resolved in favor of the party seeking relief from the judgment. (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 980 (*Rappleyea*).) We defer to the trial court's assessments of credibility and accept its factual findings where they are based on substantial evidence. (*Falahati v. Kondo* (2005) 127 Cal.App.4th 823, 828.) After engaging in that review here, we find no abuse of discretion.

---

[5] All further references are to the Code of Civil Procedure unless otherwise indicated.

### A. Excusable Neglect

We agree with the trial court that Steven's neglect of these proceedings was not excusable because his act or omission would not "have been committed by a reasonably prudent person under the same circumstances." (*Transit Ads, Inc. v. Tanner Motor Livery, Ltd.* (1969) 270 Cal.App.2d 275, 279.) He admitted receiving notice about the August 2019 hearing to explain his failure to appear at a mandatory settlement conference, but did not attend. He insists this was reasonable because he relied on the superior court clerk's representation that the cases were dismissed. However, he acknowledges receiving notice of the hearing *after* his conversation with the clerk regarding the dismissed cases. Moreover, the trial court never dismissed the order to show cause and never excused Steven from appearing at the hearing on that order after Steven filed his declaration. This placed Steven on notice that he still needed to appear and that the litigation in these cases may still be pending. Indeed, the parties discussed whether the dismissals were improper during that August 1st hearing. Rather than again asking the clerk whether he needed to appear at the hearing or attempting to clarify whether this notice was sent in error—as a reasonably prudent person under the same circumstances would have done—he simply submitted a declaration conclusively stating the cases were dismissed and there was no need to appear. (See *ibid.*)

These circumstances are thus distinguishable from *Melde v. Reynolds* (1900) 129 Cal. 308, and *Lynch v. De Boom* (1915) 26 Cal.App. 311, both finding the parties' neglect was excusable. (*Melde, supra,* 129 Cal. at p. 313 [trial court abused its discretion denying motion to set aside judgment]; *Lynch, supra,* 26 Cal.App. at p. 314 [same].) In those cases, the parties engaged in efforts to identify the dates of their court hearings and only

7

missed their hearings after relying on the court clerks' incorrect statements that their cases had not been calendared. (*Melde*, *supra*, 129 Cal. at p. 311 [defendant's acceptance of the clerk's and judge's statements was an excusable mistake, given that the defendant made "an honest effort to ascertain the condition of the cause" but was misled]; *Lynch*, *supra*, 26 Cal.App. at p. 313 [same].) Here, in contrast, Steven was presented with an order that expressly required his appearance on a specific date. The record does not indicate Steven engaged in any efforts to determine the status of his case or confirm whether his appearance was required despite those dismissals. (See *Melde*, *supra*, 129 Cal. at p. 311 [courts assess whether party's failure to determine the date for trial "was under the circumstances excusable, or the result of carelessness or inattention"].) Although Steven was self-represented during this time, that does not excuse any lack of diligence. (*Rappleyea*, *supra*, 8 Cal.4th at pp. 984–985.) Contrary to Steven's suggestion, those actions were unreasonably imprudent, and do not constitute excusable neglect.

## B. Evading Service

The trial court further determined Steven's neglect was not excusable because he evaded service—he made himself "unlocatable" despite the pending disputes regarding his parents' estate in which he was accused of wrongdoing. Steven claims there was insufficient evidence that he evaded service and instead argues Erik deliberately failed to serve him. This is unconvincing.

Critically, Erik and his counsel filed declarations detailing their efforts to locate Steven and multiple failed personal service attempts at Steven's last known Napa and Oklahoma addresses. One process server stated that on three separate occasions, a package or envelope bearing Steven's name and

Napa address was removed from the front porch between the server's visits, indicating that someone may have been present at the house. Personal service on Steven at his last known address in Oklahoma could not be completed because he did not live there. Later testimony established that while these proceedings were taking place, Steven actually left for Southeast Asia and planned to live there for approximately two years. His son testified that he did not know Steven's location, that his contact with Steven was sporadic, and that he received only a few messages from his father via social media platforms. On that basis, the trial court determined Steven "kind of flew the coop here right in the middle of everything" and "just sort of buried his head."

Steven faults Erik for attempting to serve him at places that he no longer occupied. However, Steven expressly stated in his Notice of Change of Address that he did not have any address to provide the court. He also did not include any telephone number or email address in his notice of change of address in violation of the California Rules of Court. (See Cal. Rules of Court, rules 2.111, subd. (1), 2.200.) Steven fails to explain how the other parties could contact him when he essentially notified the court that he was unreachable. His additional claim—that the parties in fact had his email address and telephone number, and that a telephone call would have provided him with adequate and actual notice—is belied by the record. Even after Erik's counsel telephoned Steven and left him a message notifying him of the hearing on the request to dispense with notice, Steven did not appear. Under these circumstances, the parties' failure to continually call Steven does not indicate a lack of diligence. (*Watts v. Crawford* (1995) 10 Cal.4th 743, 749, fn. 5 [" ' "reasonable diligence" ' " denotes " 'a thorough, systematic investigation and inquiry conducted in good faith by the party or his agent or

9

attorney' "].)  And to the extent Steven questions whether Erik and his counsel actually called him on the telephone or employed process servers, that is an issue of credibility and we "do not interfere with [the trial court's] determinations of these matters." (*McClain v. Kissler* (2019) 39 Cal.App.5th 399, 415.)  Ample evidence supported the trial court's finding of evasion.

We further reject Steven's claim that the trial court expressed doubts about its tentative ruling during the hearing on his motion, thus requiring a resolution in his favor.  (See *Rappleyea, supra*, 8 Cal.4th at pp. 980–981.)  A "judge's comments in oral argument may never be used to impeach the final order, however valuable to illustrate the court's theory they might be under some circumstances." (*Jespersen v. Zubiate-Beauchamp* (2003) 114 Cal.App.4th 624, 633.)  Although the trial court expressed doubts that Erik's efforts to serve Steven were "optimum . . . with regard to emails and phone calls and texts," the trial court's written order ultimately does not disclose any doubts of its finding that Steven evaded service based on the available information.  The order denying Steven's motion was not beyond the bounds of reason warranting reversal.  (See *Mechling v. Asbestos Defendants* (2018) 29 Cal.App.5th 1241, 1249 ["That a different decision could have been reached is not sufficient" for reversal "because we cannot substitute our discretion for that of the trial court"].)

## II.    Judgment is Not Void

Steven next argues that the judgment is void on its face—the "defect is apparent upon examination of the record" rather than extrinsic evidence— because he did not have any notice of the proceedings, an issue we review de novo.  (*Carlson v. Eassa* (1997) 54 Cal.App.4th 684, 696; *Giorgio v. Synergy Management Group, LLC* (2014) 231 Cal.App.4th 241, 247 [standard of review].)  There is no dispute that Steven did not have actual notice, and as

10

Steven correctly notes, a judgment entered against a party who has not been served in the manner required under statute is void. (*County of San Diego v. Gorham* (2010) 186 Cal.App.4th 1215, 1226–1227.) Yet Steven glosses over the trial court's order dispensing with notice and the additional finding he was evading service. Instead, Steven claims the order dispensing with notice was improper because Erik failed to exercise reasonable diligence in locating him or serving him by other available methods such as publication. This is unconvincing.

For good cause, a court may proscribe the manner of giving notice or dispense with notice "[i]f a person entitled to notice cannot be located after diligent search." (Cal. Rules of Court, rule 7.52, subd. (c); Prob. Code, § 1220, subd. (c).) A request to dispense with notice must be accompanied by a declaration describing diligent efforts to locate the party entitled to notice under the Probate Code. (Cal. Rules of Court, rule 7.52, subd. (a); *Watts*, *supra*, 10 Cal.4th at p. 763, fn. 5 [defining "reasonable diligence"].) This includes "a description of the attempts to learn of the person's business and residence addresses by: (1) Inquiry of the relatives, friends, acquaintances, and employers of the person entitled to notice and of the person who is the subject of the proceeding; (2) Review of appropriate city telephone directories and directory assistance; and (3) Search of the real and personal property indexes in the recorder's and assessor's offices for the county where the person was last known or believed to reside." (Cal. Rules of Court, rule 7.52, subds. (a)(1)-(3).)

Those requirements were satisfied here. Erik submitted declarations documenting his, his son's, and his counsel's efforts to locate Steven through social media platforms, internet search engines, and legal research databases. The declaration included Erik's search of the Garfield County

11

Oklahoma recorder's website, which confirmed Steven's last known residence in Oklahoma belonged to Steven's daughter. (See Cal. Rules of Court, rule 7.52, subd. (a)(3).) Erik's counsel contacted Steven by telephone, left him a message advising him of the hearing on whether to dispense with notice, but did not obtain any response. Process servers attempted personal service on eight different occasions. The court then dispensed with notice after finding "all notices required by law have been given. . . [n]o requests for special notice have been filed."

Steven contends these efforts by Erik to locate and serve him were inadequate because Erik did not: (1) attempt service by publication; (2) contact Jessica Hennion, Steven's daughter, to discover his whereabouts; or (3) email, text, or telephone Steven multiple times. Service by publication is not, however, required before dispensing with notice. (See *In re Jennelle C.* (1987) 197 Cal.App.3d 813, 818 [finding due diligence "in attempting to notify the alleged father of the hearing" despite failure to serve by publication]; see also *Watts*, *supra*, 10 Cal.4th at p. 749, fn. 5 [noting that service by publication "rarely results in actual notice"].) Likewise, the failure to contact Steven's daughter or email, text, or telephone Steven multiple times does not preclude a finding of due diligence. Indeed, only "a number of honest attempts to learn the defendant's whereabouts through inquiry and investigation generally" is needed to demonstrate diligence. (*Rios v. Singh* (2021) 65 Cal.App.5th 871, 880.)

In this case, Erik made numerous attempts to find and serve Steven, including calling and leaving him a message at least once. Erik did so even though Steven filed a notice stating he was, for all practical purposes, unreachable. Although Erik arguably could have done more to find and serve Steven, his failure to do so is not unreasonable in light of Steven's purposeful

12

evasion of service.  (*Ante*, at pp. 9–11.)  We therefore conclude that Erik exercised reasonable diligence.  Accordingly, the trial court's decision to dispense with notice to Steven was proper.

## DISPOSITION

The judgment is affirmed.

_____
Chou, J.*

WE CONCUR:


_____
Fujisaki, Acting P. J.


_____
Jackson, J.


A161257

_____

*Judge of the Superior Court of San Mateo County, assigned by the
Chief Justice pursuant to article VI, section 6 of the California Constitution.

14