[Civ. No. 51735. Second Dist., Div. Five. July 28, 1978.]

LISA UVA, a Minor, etc., et al., Plaintiffs and Respondents, v. JEFFREY EVANS, Defendant and Appellant.

COUNSEL

Ives, Kirwan & Dibble, John Brevidoro and Peter M. Fonda for Defendant and Appellant.

Louis M. Niven for Plaintiffs and Respondents.

OPINION

**KAUS, P. J.**—Minor plaintiff (Lisa) and her father filed a complaint for damages arising from injuries sustained by Lisa as a result of her being bitten by a dog allegedly owned by defendant on May 22, 1975. The complaint was filed May 19, 1976, and, in the prayer, requested $30,000 general damages. A copy of the complaint and summons were personally served upon defendant on August 25, 1976. Defendant believed that the complaint was "totally disassociated with anything which I had been aware of. . . ." Believing that there had been "some mistake" he returned the complaint to plaintiff Thomas Uva.

On November 5, 1976, plaintiffs filed a "Request to Enter Default" in which they stated that damages requested were $30,000 and costs were $61. A copy of this document was served by mail upon defendant. Defendant later claimed that he never received a copy of the "Request to Enter Default."

On December 30, 1976, plaintiffs filed a written request that the court enter judgment. This document recited the same damages and costs as the "Request to Enter Default" and was, again, served by mail upon defendant. Defendant admitted that he had received a copy of the request to enter judgment.

The matter was called for trial on January 11, 1977. At the ex parte hearing, both Lisa and her father testified. The court ordered judgment entered for plaintiffs.

On January 21, 1977, defendant moved to set aside the default and attached to his written motion a proposed answer to the complaint. The motion was argued and denied on February 1, 1977. On February 10, 1977, the court entered a judgment for plaintiffs awarding $30,000 general damages and $61 court costs. This appeal followed.

As a preliminary matter, we note that defendant purports to take this appeal from the denial of the motion to set aside the default "and any judgment entered thereon. . . ." ██ No appeal lies from the denial of a motion to vacate default, although such a ruling can be reviewed on an appeal from the judgment. (*Sanford* v. *Smith* (1970) 11 Cal.App.3d 991, 997 [90 Cal.Rptr. 256].) Consonant with the assumption of both parties, we interpret the notice of appeal as specifying that the appeal is taken from the judgment. (See *Smith* v. *Smith* (1954) 126 Cal.App.2d 194, 195 [272 P.2d 118].)

Defendant's initial contentions focus upon sections 425.10 and 425.11 of the Code of Civil Procedure and the relationship of those statutes to a judgment by default. Section 425.10[1] provides that when an action is brought in superior court to recover damages for personal injury or wrongful death, the amount of damages sought "shall not be stated" in the complaint. Section 425.11 states, inter alia, that before a default judgment may be taken, "the plaintiff shall give notice to the defendant of the amount of special and general damages sought to be recovered . . . ."

Defendant first juxtaposes these statutes with section 580, which limits the amount of damages recoverable on a default to the amount "demanded in [the] complaint." He then argues that because section 425.10 mandates that no explicit amount of damages may be prayed for in a superior court personal injury action, section 580 precludes the recovery of any damages in case of a default in such an action; in effect, he urges that the statutes operate to limit the jurisdiction of the court rendering a default judgment to a determination of the question of liability, not of damages.

Defendant's argument suggests that the enactment of sections 425.10 and 425.11 was intended to work a major change in the superior court's jurisdiction to grant default relief in personal injury and wrongful death actions. However, we need not resolve that issue in this case since the facts before us do not require it. Right or wrong, the complaint filed and served herein did contain a recitation of the damages sought[2] and the judgment did not exceed the amount requested. In this case, section 580

---

[1]Unless otherwise stated, all statutory references are to the Code of Civil Procedure.

[2]Needless to say, defendant made no motion to strike the request for damages; such a motion, of course, would have obviated all of defendant's present problems because it would have prevented entry of the default. (§ 435; 3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 860.)

was fully complied with. Moreover, the amount of damages sought was contained in every piece of paper which plaintiff served on defendant; thus defendant suffered no conceivable prejudice from the procedure followed here. The resolution of the apparent anomaly in the statutes will have to await a case with appropriate facts.

■ The same may be said for defendant's contention that he was denied due process because he was not afforded sufficient time to respond to the notice of damages required by section 425.11. The complaint was personally served on defendant on August 25, 1976; the request to enter default was served by mail November 5, 1976;[3] the request that the court enter judgment was served by mail on December 30, 1976. Each of these documents contained a statement of the amount of damages sought. Since the matter was not heard until January 11, 1977, the three documents were served on defendant long before any final adjudication adverse to him. Defendant had ample time to respond had he so desired.[4]

Defendant also claims that the several notices were deficient in that they did not specifically recite the amount of special damages sought. The fact is, however, that the final judgment in this case did not award any special damages.[5] Defendant has not shown any prejudice flowing from the lack of specification of special damages, nor can we imagine any.

■ Defendant further argues that the trial court abused its discretion in denying defendant's motion to set aside the default. In attempting to bear his burden of proof on this issue (see *Ochinero* v. *Wertz* (1962) 200 Cal.App.2d 533, 535 [19 Cal.Rptr. 466]), defendant points out that his application for relief was prompt, that he proffered an arguably meritorious defense, and that his failure to act was based upon "an honest mistake of law."

Defendant's alacrity in seeking relief from default is no basis for holding that the trial court abused its discretion in denying that

---

[3]Defendant claimed that he never received this document; however the trial court made an explicit factual finding—binding upon us—that it did not believe defendant's claim in this regard. (See *Griffith Co.* v. *San Diego College for Women* (1955) 45 Cal.2d 501, 508 [289 P.2d 476, 47 A.L.R.2d 1349].)

[4]Of course, there is considerable irony in defendant's contention since he failed to file anything in response to the several documents served upon him. He has given us no reason to suppose that an additional notice of damages would have been any more successful in prodding him to respond.

[5]A judgment entered on January 18, 1977, purported to award $182 for medical costs. However, this judgment was superseded by the judgment of February 10, 1977, which deleted the medical cost compensation.

relief. ■ "Diligence is an essential ingredient of a motion for relief [from default] . . . ." (*Ludka* v. *Memory Magnetics International* (1972) 25 Cal.App.3d 316, 321 [101 Cal.Rptr. 615].) It is, however, just that—an ingredient. It does not compel relief. (See *Benjamin* v. *Dalmo Mfg. Co.* (1948) 31 Cal.2d 523, 529 [190 P.2d 593].)

Nor are we persuaded that defendant's presentation of his answer can be posited as a basis for a finding that the trial court abused its discretion. ■ While the existence of an arguably meritorious defense may reasonably lend support to a trial court's determination that a default should be vacated, it does so only because it aids the policy that "appellate courts are more disposed to affirm an order where the result compels a trial on the merits . . . ." (*Slusher* v. *Durrer* (1977) 69 Cal.App.3d 747, 753 [138 Cal.Rptr. 265].) Section 473 requires that a proposed answer be filed with the motion to set aside the default. The existence of a defense is irrelevant to the critical question of whether the moving party showed that his failure to act was caused by "mistake, inadvertance, surprise or excusable neglect." (§ 473.)

■ No such showing was made here. Defendant was personally served with a complaint and summons in May 1976 which fully set forth the claims against him. The summons stated, in boldface type, as follows: "NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within thirty days." Below this warning, the summons reiterated the necessity for filing a response within 30 days, stated that absent a response a judgment could be entered against defendant, and advised prompt consultation with an attorney so that the "written response, if any, may be filed on time." Defendant's assertion that the summons and complaint "appeared to be totally disassociated with anything which I had been aware of" is belied by his frank acknowledgement that he was aware that Lisa had been bitten by the dog which was kept at his house on May 22, 1975. Defendant's failure to respond to the complaint, or to take any action after service of the request to enter default, were not the actions of "a reasonably prudent person under the same circumstances." (*Transit Ads, Inc.* v. *Tanner Motor Livery, Ltd.* (1969) 270 Cal.App.2d 275, 279 [75 Cal.Rptr. 848]; *Kooper* v. *King* (1961) 195 Cal.App.2d 621, 626 [15 Cal.Rptr. 848].) The trial court was well within its discretion in denying defendant's motion to set aside the default.

■ Defendant's final claim is that the award to plaintiff of $30,000 damages was grossly disproportionate to the injury suffered. Plaintiff's

threshold contention is that review on appeal is limited to jurisdictional matters and fundamental defects in pleading (*City Bank of San Diego* v. *Ramage* (1968) 266 Cal.App.2d 570, 582 [72 Cal.Rptr. 273]) and that the question of the excessiveness of damages awarded falls within the general rule that sufficiency of the evidence cannot be reviewed on an appeal from a default judgment. (*Heathman* v. *Vant* (1959) 172 Cal.App.2d 639, 644 [343 P.2d 104]; *Lester* v. *Beer* (1946) 74 Cal.App.2d Supp. 984, 987 [168 P.2d 998]; *Crackel* v. *Crackel* (1911) 17 Cal.App. 600, 602-603 [121 P. 295].)

We have been unable to find any case explicitly holding that, where proof of damages is required in the trial court prior to a default judgment being entered (see Code Civ. Proc. § 585, subd. 2) the appellate court is precluded from reviewing the question of whether the damages awarded were excessive. On the other hand, the few appellate courts which have been faced with the problem have in fact conducted such a review. In *Richee* v. *Gillette Realty Co.* (1929) 97 Cal.App. 365, 366 [275 P. 477], plaintiff brought suit on two promissory notes and prayed for "reasonable" attorney's fees in accordance with provisions in the notes themselves. Defendant appealed from the default judgment against him, claiming that plaintiff's failure to plead a specific amount of attorney's fees rendered the judgment therefor "excessive." The court reached the issue and held the trial court's award of reasonable attorney's fees proper. (*Id.,* at p. 367.) In *Buck* v. *Morrossis* (1952) 114 Cal.App.2d 461 [250 P.2d 270], plaintiffs in an unlawful detainer action prayed for and were awarded treble damages after defendant defaulted. On appeal, defendant argued that the evidence did not support the treble damage award. Plaintiffs objected to appellate review on the same grounds articulated here—that questions regarding sufficiency of evidence are unreviewable on appeal from a default judgment. Justice Peters (then Presiding Justice of the Court of Appeal) stated, "It is doubtful whether this rule applies to damages. (*Richee* v. *Gillette Realty Co.,* 97 Cal.App. 365 [275 P. 477].) In such cases, in spite of the default, it would seem that the court is under a duty to inform itself of the amount of unliquidated damages." (*Id.,* at p. 467.) The court then went on to review the evidence and held that there was sufficient evidence to support the treble damage award.

We agree with the court in *Buck*. The power of an appellate court to review the trier of fact's determination of damages is severely circumscribed. An appellate court may interfere with that determination only where the sum awarded is so disproportionate to the evidence as to suggest that the verdict was the result of passion, prejudice or corruption

(*Seffert* v. *Los Angeles Transit Lines* (1961) 56 Cal.2d 498, 507 [15 Cal.Rptr. 161, 334 P.2d 337]; *Douglas* v. *Janis* (1974) 43 Cal.App.3d 931, 940 [118 Cal.Rptr. 280]) or where the award is so out of proportion to the evidence that it shocks the conscience of the appellate court. (*Taylor* v. *Pacific Container Co.* (1957) 148 Cal.App.2d 505, 513 [306 P.2d 1049]; *Strosk* v. *Howard Terminal Co.* (1954) 129 Cal.App.2d 797, 802 [277 P.2d 828].) A rule precluding review of damages on appeal from a default judgment would consequently protect the award precisely in those cases in which review is most necessary—that is, where the damages awarded are totally unconscionable and without evidentiary justification.

Moreover, we believe that the right to appellate review flows logically from the fact that damages must be proved in the trial court before the default judgment may be entered. (§ 585, subd. 2.) The requirement of proof of damages is meaningless if it can be fulfilled by *any* evidence, even evidence which results in a judgment prompted by "passion, prejudice or corruption." Yet without appellate review, such a judgment would stand. When the trier of fact in a default case is a jury the trial court is not bound by that jury's assessment of damages. (*Cyrus* v. *Haveson* (1976) 65 Cal.App.3d 306, 318 [135 Cal.Rptr. 246].) While the role of the appellate court in reviewing damages is much more limited than that of the trial court reviewing a jury verdict, the policies which sanction such review are not dissimilar: just as the trial court need not sit idly by and watch injustice be done through an improper award by the jury, we know of no statutory or constitutional barrier which requires an appellate court to ignore gross injustice in the award of damages simply because the judgment was procured by way of default.

■ The instant case is illustrative. The evidence showed that Lisa had suffered dog bites on her right forearm and abdomen. The laceration on her arm required stitches, the cuts on her stomach did not. She was given an injection to prevent tetanus and within two weeks the doctor described the wounds as "well-healed." Total medical expense for these procedures was $182. In addition, because the laceration on her forearm had left a scar, the doctor prescribed plastic surgery which would require approximately three days of hospitalization. Estimated costs of the plastic surgical repair were $500 for the surgery, $1,500 for hospitalization, and $100-$150 for anesthesia.

Based only upon the above showing, the trial court awarded $30,000 in general damages. We conclude that that award was so grossly dispropor- tionate as to be without evidentiary support and shocking to the

conscience. While we do not doubt that the incident was psychologically disturbing to the nine-year-old plaintiff, there was no evidence that it was particularly unsettling nor was it claimed that the medical procedures had been, or would be, unusually painful. In short, the evidence showed that Lisa suffered a couple of average dog bites. The award of $30,000 general damages in compensation for those bites shocks the conscience of this court and compels reversal and remand for a new trial solely on the issue of damages. (See *Cunningham* v. *Simpson* (1969) 1 Cal.3d 301, 310-311 [81 Cal.Rptr. 855, 461 P.2d 39].)

That portion of the judgment ordering that plaintiffs shall recover the sum of $30,000 together with the costs of suit from defendant is reversed with directions that the trial court retry the issue of damages. In all other respects the judgment is affirmed.

Ashby, J., and Hastings, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied September 27, 1978.