[No. B025129. Second Dist., Div. Five. May 17, 1988.]

In re MATTHEW S., a Minor.
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN'S
SERVICES, Petitioner and Respondent, v.
KATHLEEN S., Objector and Appellant.

316

COUNSEL

Judith H. Bayer, under appointment by the Court of Appeal, for Objector and Appellant.

De Witt W. Clinton, County Counsel, Sterling R. Honea and Joe Ben Hudgens, Deputy County Counsel, for Petitioner and Respondent.

OPINION

**ASHBY, Acting P. J.**—Appellant Kathleen S., the mother of Matthew S., appeals from the judgment which terminated her parental rights. We affirm.

## STATEMENT OF CASE

The Los Angeles County Department of Children's Services filed a petition pursuant to Welfare and Institutions Code section 300, subdivision (a) after two-year-old Matthew fell from a second-story window while living with appellant. On June 16, 1982, the juvenile court took dependency jurisdiction over Matthew although he remained in appellant's custody. A supplemental petition was filed and on December 12, 1983, custody of the child was taken from appellant and given to his maternal grandparents.

Thereafter, respondent Los Angeles County Department of Children's Services petitioned to free Matthew from appellant's parental custody pursuant to Civil Code section 232, subdivisions (a)(1), (2) and (7). The petition was filed to allow the maternal grandparents to adopt Matthew.

Because personal service could not be obtained, notice of the proceedings was published. When neither appellant nor Matthew's father appeared, the matter proceeded as a default, and the parents' custody and control of Matthew was terminated. Appellant appeals from the judgment terminating her parental rights. The child's father is not a party to this appeal.

## STATEMENT OF FACTS

Matthew lived with appellant from the time of his birth (Mar. 25, 1980) until he was approximately two years old. During this time, numerous referrals from many different sources were made to the Department of Social Services. The first referral occurred just a few months after Matthew was born. All referrals indicated that appellant was incapable of caring for her son.

When Matthew was just two years old, he fell out of a second-story window. This incident could not have occurred but for appellant's neglect and omission. This event caused the court to take jurisdiction over Matthew, although he remained in appellant's custody. When it was shown that appellant possessed severe emotional and mental problems rendering her incapable of caring for Matthew, that appellant had taken Matthew and left the court's jurisdiction, that appellant had refused to cooperate with social workers and that appellant had refused to obtain psychotherapy as ordered by the court, Matthew was placed with his maternal grandparents. After August 1983, appellant did not see or communicate with Matthew.

Appellant received psychotherapy from Michael Braver, a licensed clinical social worker, from February 26, 1980, until August 25, 1980. He diagnosed her as having an "agitated depression with hysterical features" as

well as having a personality disorder. He also noted that she was guarded, defensive, childish, dishonest, manipulative, passive-aggressive, and that she reached into mystical areas because her support systems were not based in reality. Braver stated that it was urgent that appellant regularly receive psychotherapy to maintain a footing in reality. Without therapy, Braver believed there was a serious question as to whether Matthew would receive adequate care while in appellant's custody.

After considering the evidence, including Braver's report, the court entered judgment terminating the parental rights of appellant and Matthew's father. The court found that Matthew had been left without provision or support and without communication from his parents (Civ. Code, § 232, subd. (a)(1)), had been neglected or cruelly treated (Civ. Code, § 232, subd. (a)(2)), and that it would be detrimental to him to be returned to his parents because they could not maintain an adequate parental relationship with him. (Civ. Code, § 232, subd. (a)(7).) Appellant appeals from this judgment.

## DUE PROCESS

Appellant contends that she was denied due process because she did not receive adequate notice of the termination hearing. This contention lacks merit.

In attempting to serve appellant with notice of the hearing, the following unsuccessful efforts were made: attempts were made to serve her at her last known address; letters were mailed to her last known address; inquiries were made through the Department of Motor Vehicles and the armed services; and the tax rolls, voter registration and telephone directories were searched. Thereafter an affidavit was filed with the court indicating, among other statements, that appellant's parents, the only persons likely to know appellant's whereabouts, had been contacted and that appellant's whereabouts were unknown. Notice was subsequently published. These efforts were reasonably diligent, satisfying the statutory and due process requirements which must be met in termination hearings. (Civ. Code, § 235; *In re B. G.* (1974) 11 Cal.3d 679, 688-689 [114 Cal.Rptr. 444, 523 P.2d 244]; *In re Beebe* (1974) 40 Cal.App.3d 643 [115 Cal.Rptr. 322]; cf. *Ansley* v. *Superior Court* (1986) 185 Cal.App.3d 477 [229 Cal.Rptr. 771].)

## SUFFICIENCY OF THE EVIDENCE

Appellant contends that the evidence was not sufficient to terminate her parental rights. Respondent suggests that because appellant defaulted she is precluded from raising this issue on appeal. We hold that appellant is not

precluded from raising this issue on appeal and we find there was sufficient evidence to terminate her parental rights.

■  The general rule in civil matters is that "sufficiency of the evidence cannot be reviewed on an appeal from a default judgment." (*Uva v. Evans* (1978) 83 Cal.App.3d 356, 363 [147 Cal.Rptr. 795].) Generally, a defaulting party on appeal only may raise jurisdictional and fundamental defects in the pleading. (*Bristol Convalescent Hosp.* v. *Stone* (1968) 258 Cal.App.2d 848, 859 [66 Cal.Rptr. 404].)[1] Contrary to respondent's suggestion, it is inappropriate to apply the general rule to hearings which determine if a parent's rights should be terminated. (Civ. Code, § 232.)

Denying parents the custody of their own children is a drastic measure. "Parenting is a fundamental right, and accordingly, is disturbed only in extreme cases of persons acting in a fashion incompatible with parenthood." (*In re Carmaleta B.* (1978) 21 Cal.3d 482, 489 [146 Cal.Rptr. 623, 579 P.2d 514].) However, the rights of parents are not absolute. They must be balanced with protecting the child, protecting the child's interest in a secure and loving environment, the familial relationship, and "preserving the integrity and privacy of the family unit, free of state intervention and social stigma attached to either parent or child." (*In re Angelia P.* (1981) 28 Cal.3d 908, 919 [171 Cal.Rptr. 637, 623 P.2d 198].)

In order to protect these competing interests, termination proceedings are "special" (*In re Mark K.* (1984) 159 Cal.App.3d 94, 102 [205 Cal.Rptr. 393]), and specifically designed to contain many procedural safeguards not found in "regular" civil trials. For example, termination hearings require clear and convincing evidence, a heightened burden of proof (*In re Angelia P., supra,* 28 Cal.3d at p. 919), receive precedence over all other civil hearings (Civ. Code, § 232.3, subd. (b)), exclude the public (Civ. Code, § 235.5), maintain all records confidential (Civ. Code, § 233.5), and allow for the appointment of counsel for the child and indigent parents (Civ. Code, §§ 237.5, 237.7). In addition, parents cannot stipulate to relinquish their parental rights (*In re Marriage of Goodarzirad* (1986) 185 Cal.App.3d 1020 [230 Cal.Rptr. 203]) and summary judgment proceedings are not permitted. (*In re Mark K., supra,* 159 Cal.App.3d 94.) In light of the special characteristics of termination proceedings and the important interests which they are designed to protect, it is appropriate to allow appellant, whose parental rights were forever terminated, to attack the sufficiency of the evidence even though she failed to appear at the hearing.

---

[1] For exceptions to this general rule, see, e.g., *Uva* v. *Evans, supra,* 83 Cal.App.3d 356 [damage issue reached on appeal when excessive and disproportionate to evidence]; *In re Marriage of Cueva* (1978) 86 Cal.App.3d 290 [149 Cal.Rptr. 918] [attorney fees issue reached on appeal when sum is disproportionate to evidence].

We now turn to examining the sufficiency of the evidence. ■ We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court. (*In re Laura F.* (1983) 33 Cal.3d 826, 833 [191 Cal.Rptr. 464, 662 P.2d 922]; *In re Jacqueline G.* (1985) 165 Cal.App.3d 582, 585 [211 Cal.Rptr. 827].) " '[T]he [appellate] court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find [that termination of parental rights is appropriate based on clear and convincing evidence].' " (*In re Angelia P., supra,* 28 Cal.3d at p. 924, quoting *Jackson* v. *Virginia* (1979) 443 U.S. 307 [61 L.Ed.2d 560, 99 S.Ct. 2781].)

Appellant was denied her parental rights after the court found that she abandoned Matthew (Civ. Code, § 232, subd. (a)(1)), he was neglected or cruelly treated (Civ. Code, § 232, subd. (a)(2)) and a return to appellant's home would be harmful to him because his parents failed in the past, and it is likely that they would fail in the future to maintain an adequate parental relationship with him. (Civ. Code, § 232, subd. (a)(7).) All findings are supported by the evidence.

■ A rebuttable presumption of an intent to abandon is created in Civil Code section 232, subdivision (a)(1) if the child has been left in the custody of another for a period of six months without any communication from the parent. (*In re Rose G.* (1976) 57 Cal.App.3d 406, 419 [129 Cal.Rptr. 338].) A probation report, dated a few months before entry of judgment, was submitted into evidence. This document showed that appellant did not contact her son, contribute to his support, inquire as to his well-being or express any interest in maintaining contact with Matthew for a period of more than two years (Aug. 1983 through Dec. 1985). These facts support a finding that appellant abandoned Matthew.

■ Appellant contends that the evidence utilized to support the findings that Matthew was neglected or cruelly treated (Civ. Code, § 232, subd. (a)(2)) and that a return to appellant's home would be harmful to him (Civ. Code, § 232, subd. (a)(7)) was stale. This contention is not persuasive.

Numerous documents were submitted into evidence, the last of which was dated approximately five months prior to the entry of judgment. The information contained in the reports came from numerous sources: the social worker, appellant's therapist, appellant's parents (custodians of Matthew), and neighbors. Because appellant had not made contact with anyone for a period of at least two years there was no information from appellant. While evidence to terminate parental rights must be based upon present

circumstances (*In re Carmaleta B., supra,* 21 Cal.3d at p. 493) appellant cannot utilize her own incommunicado status to suggest that the information was stale. (Cf. *In re Nalani C.* (1988) 199 Cal.App.3d 1017, 1024 [245 Cal.Rptr. 264].) Appellant's own actions in failing to contact her son, her parents, her therapist, and the social service personnel, made it impossible for the authorities to obtain totally up-to-date information.

Matthew was protected by the court after numerous reports indicated that appellant was not capable of caring for Matthew and immediately after he fell from a two-story window. Appellant's ability to care for Matthew was questioned by her own therapist. The therapist stated that appellant reached into mystical areas for support systems, and that without weekly psychotherapy she would not be able to maintain a footing in reality or care for Matthew. Appellant was described as an agitated, guarded, defensive, childish, dishonest, manipulative, and passive-aggressive person. After Matthew was protected by the court, appellant failed to continue with treatment, failed to cooperate with authorities, failed to obey court orders and failed to contact her son for more than two (2) years. Most importantly, from the time Matthew was taken into custody until the date of the termination hearing, there was no indication that appellant had taken any steps to deal with her psychiatric conditions, had taken steps to demonstrate that the past neglect of her son would not reoccur, or had taken any steps toward rehabilitation. All information indicated that it was unlikely that appellant would be able to provide for Matthew in the future. Before parental rights are terminated the child's future environment must be considered. Undoubtedly, a parent's ability to provide in the future can be evaluated by considering a parent's pattern of conduct. (*In re Laura F., supra,* 33 Cal.3d at p. 833; *In re Jacqueline G., supra,* 165 Cal.App.3d at p. 585; see, e.g., *In re David E.* (1978) 85 Cal.App.3d 632 [150 Cal.Rptr. 790].) Thus, when an unfit mother takes reasonable steps to ensure that past neglect will not reoccur, parental rights will not be terminated. (See, e.g., *In re Terry E.* (1986) 180 Cal.App.3d 932 [225 Cal.Rptr. 803].) Appellant's untreated, serious personality flaws and emotional instability, coupled with her past conduct, her lack of concern for Matthew's well-being and her lack of preparation to deal with the responsibilities of parenthood, adequately supported the court's finding that Matthew had been neglected or cruelly treated (Civ. Code, § 232, subd. (a)(2)). These facts also supported the findings that appellant failed to provide an adequate home and parental relationship with Matthew, that it was likely that she would fail in the future, and that return to appellant's home would be detrimental to Matthew. (Civ. Code, § 232, subd. (a)(7).) Without evidence that appellant was presently capable of caring for her son, in light of her past history, the court was correct in terminating her parental relationship with Matthew.

The judgment is affirmed.

Boren, J., and Hastings, J.,* concurred.

---

* Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.