Filed 4/13/16  Modarres v. Thomas CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| FARAH MODARRES, | |
| Plaintiff and Respondent, | G048684, G050017 |
| v. | (Super. Ct. No. 07CC03908) |
| JOHN DAVID THOMAS et al., | O P I N I O N |
| Defendants and Appellants. | |

Appeals from a judgment of the Superior Court of Orange County, Richard W. Luesebrink, Judge (retired judge of the Orange Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.), and Gregory H. Lewis, Judge. Affirmed as modified and remanded with directions.  Request for judicial notice.  Denied.

SoCal Law Group, James D. Mortensen; Law Offices of Andrew D. Weiss and Andrew D. Weiss for Defendants and Appellants.

Amezcua-Moll & Associates, Rosemary Amezcua-Moll, Sarah J. Nowels and Andrew J. Mase for Plaintiff and Respondent.

*　　　*　　　*

## INTRODUCTION

John David Thomas and 184 Diamond, LLC (defendants), appeal from a default judgment entered after the trial court imposed terminating sanctions against Thomas for misuse of the discovery process. Following a default prove-up hearing, the court awarded plaintiff Farah Modarres a total of $217,000 in compensatory damages against defendants and $1 million in punitive damages against Thomas only. Defendants argue the trial court abused its discretion by imposing terminating sanctions against Thomas because a lesser sanction would have been sufficient. They also challenge the punitive damages award against Thomas on the grounds Modarres presented insufficient evidence of Thomas's net worth at trial, the punitive damages award was unconstitutionally excessive in amount, and the award erroneously excluded 184 Diamond, LLC, which was otherwise jointly and severally liable with Thomas for compensatory damages.

We conclude the trial court did not abuse its discretion by imposing terminating sanctions against Thomas for his misuse of the discovery process. We also conclude Modarres failed to present admissible evidence of Thomas's then current financial condition sufficient for us to make a well-informed decision whether the amount of punitive damages awarded was unconstitutionally excessive. We therefore modify the judgment to strike the award of punitive damages and remand for a new default prove-up hearing only on the issue of the amount of punitive damages. As modified, the judgment is affirmed.

## BACKGROUND

### I.

### MODARRES INITIATES THIS ACTION; SUMMARY OF THE ALLEGATIONS OF THE FOURTH AMENDED COMPLAINT

Modarres initiated this lawsuit and filed a fourth amended complaint against defendants, Crestridge Estates, LLC, Dolphin Capital, LLC, Steven Slagter, and

2

Southland Title Corporation. As relevant to the issues on appeal, Modarres alleged breach of contract and fraud claims against defendants, based on the following allegations.

In May 2004, Modarres and 184 Diamond, LLC, entered into an agreement (the purchase agreement), whereby Modarres agreed to purchase vacant land located on Diamond Street in Laguna Beach (the Diamond property) for the price of $815,000. In deciding to purchase the Diamond property, Modarres relied on defendants' multiple listing service advertisement which stated: (1) "Building Plans Available"; (2) "Lot Has Been 70% Graded"; (3) "Original Plans Expired"; (4) "Previously Approved Plans Need To Be Modified And Resubmitted to Drb"; and (5) "Soils, Geo Completed." She also relied on Thomas's representation that he was the sole owner of 184 Diamond, LLC, and had exclusive control over it. Modarres later learned that representations in the advertisement were not true and, specifically, no building plans for the development of the Diamond property had been approved.

In June 2004, pursuant to the purchase agreement, Modarres deposited $101,000 into an escrow account, $100,000 of which the escrow holder released to 184 Diamond, LLC. Shortly thereafter, Thomas told Modarres that the first trust deed holder on the Diamond property was about to foreclose on it and she would get nothing in return for the $100,000 that she had already invested unless she agreed to deposit additional money into the escrow account to stop the foreclosure. In consideration for reducing the purchase price to $788,500 and to stop the foreclosure process, Modarres deposited an additional $108,000 into escrow. Modarres also learned that "the encumbrances on the Diamond Property exceeded $1.5 million, which debt was almost twice her purchase price."

Escrow was scheduled to close on July 26, 2004, but did not because defendants were unable to "come up with the money to pay off the excess debt" encumbering the Diamond property.

Unbeknownst to Modarres, the third trust deed holder on the Diamond property recorded a notice of default in July 2004 and recorded a notice of trustee's sale in October 2004.

In February or March 2005, Modarres agreed to loan defendants $182,000 (plus 11% interest) that would be secured by a deed of trust on other property owned by Thomas "or one of his alter-ego limited liability companies." The corresponding promissory note was for $182,000 and was due on September 16, 2006. Modarres alleged she "was forced to make this agreement so the transaction could close or she would otherwise lose the deposits she had made toward the purchase of the Diamond Property, which were already released to the seller by the escrow officer as part of Thomas' overall fraudulent scheme." The escrow holder was instructed to prepare an assignment of the beneficial interest in a deed of trust secured by two properties owned by 900 Oriole, LLC, which was one of Thomas's "alter-ego limited liability companies," from Dolphin Capital, LLC, "another alter-ego of Thomas," to Modarres. Thomas held himself out as the managing member and sole owner of 900 Oriole, LLC.

Modarres also deposited an additional $55,649.94 into escrow on February 25, 2005, and $146,590 on March 14. On March 16, 2005, escrow closed on Modarres's purchase of the Diamond property.

In May 2006, 900 Oriole, LLC, declared bankruptcy under chapter 11 without Modarres's knowledge. Its sole assets in the bankruptcy proceeding were the two properties that secured Modarres's $182,000 loan. Modarres learned that Thomas only held a 1 percent interest in 900 Oriole, LLC. When repayment of the $182,000 loan became due under the promissory note on September 16, 2006, Modarres did not receive payment. Modarres learned the instrument that was to convey Dolphin Capital, LLC's beneficial interest in the two 900 Oriole, LLC, properties was defective. Instead of conveying a security interest in those properties, it mistakenly memorialized the reconveyance of a trust deed in connection with the purchase of the Diamond property.

4

Modarres alleged that an escrow officer informed her, "Thomas always does business this way," referring to Thomas's "fraudulent schemes, lies and conspiring ways."

## II.

### THOMAS FAILS TO PRODUCE DOCUMENTS IN RESPONSE TO MODARRES'S DISCOVERY REQUESTS.

In September 2009, Modarres served requests for production of documents on several of the defendants named in the fourth amended complaint, including 184 Diamond, LLC, and Thomas. The requests served on Thomas were the second set served on him. Modarres sought, inter alia, Thomas's bank statements, deposit slips, and checks from three months before the beginning of escrow until the then present time.

In December 2009, after Modarres did not receive responses to her requests for production of documents, she filed a motion to compel responses and requested an award of monetary sanctions.

### A.

*The Trial Court Orders Defendants to Produce Documents and Pay Monetary Sanctions by January 12, 2010; Defendants Do Not Comply.*

On January 4, 2010, the trial court granted Modarres's motion to compel, stating in part: "The Court having posted its tentative ruling on the internet and responding party having submitted and the[re] being no appearance by moving party, the tentative ruling becomes the final ruling as follows: [¶] The Motion to Compel Responses to Requests for Production is Granted. Sanctions of $715.00 are awarded in favor of Plaintiff and against Defendants 184 Diamond LLC, Crestridge Estates, Steven Slagter, Dolphin Capital, LLC and John Thomas, jointly and severally. Defendants 184 Diamond LLC, Crestridge Estates, Steven Slagter, and Dolphin Capital, LLC are ordered to serve plaintiff's counsel with verified responses, without objections, and all responsive documents to Requests for Production, Set One, by no later than 1-12-10. *Defendant*

5

*John Thomas is ordered* to serve plaintiff's counsel with verified responses without objections, and all responsive documents to Requests for Production, Set Two, by *no later than 1-12-10*." (Italics added.)

On January 14, after Modarres did not receive the documents as ordered by the court or payment of the monetary sanctions, she submitted an ex parte application seeking enforcement of the court's January 4, 2010 order, and also, given the then imminent trial date of January 25, 2010, an order imposing terminating sanctions and monetary sanctions.

B.

*The Trial Court Issues Terminating Sanctions.*

The hearing on Modarres's ex parte application seeking enforcement of the court's order of January 4, 2010, and for terminating sanctions and monetary sanctions, was held on January 21. At the hearing, defendants' counsel stated his "clients [were] scrambling to locate these documents, which ones they have. They haven't been able to do so."

In response to defendants' counsel's statement that there had been no formal notice of ruling after the January 4, 2010 order, the trial court pointed out defendants had submitted on the court's tentative ruling and thus were aware of those proceedings. Defendants' counsel acknowledged defendants had not complied with the order but generally stated, "[w]e are trying" and argued terminating sanctions would be "disproportionate." The court stated: "How could it be disproportionate? [Modarres's counsel] can't prepare for trial. You have a trial coming up. [¶] When?" Modarres's counsel responded, "Monday" and added, "[o]ur paperwork is due by Friday at noon, our exhibits."

Defendants' counsel argued, "the documents in question only relate, as [Modarres's counsel] has argued, to the alter ego issues. They don't relate to the

6

underlying liability issues." The court responded: "I'm not sure I can agree with you on that, particularly when there has been no response. It's difficult to categorize how they would [a]ffect the trial, other than to say that you have denied [Modarres's counsel] the opportunity to gather the necessary discovery and proceed to trial, which is adverse or is in conflict with the direct order that the court has given." The court took the matter under submission and ordered the parties to return the next day.

The following day, Modarres's counsel told the court that she had received "part of the documents" either the night before or that morning. Specifically, Modarres's counsel stated the requests for production sought bank statements from three months prior to the opening of escrow in June 2005 to the present time and the earliest bank records that she had received from Thomas were dated from December 2005 and ended in 2007. Therefore, Thomas failed to produce bank records for nine months in 2005, and for all of 2008 and 2009. Counsel also stated that Modarres received no documents from 184 Diamond, LLC. In response to defendants' counsel's assertion in a supplemental declaration and at the hearing that all the documents were destroyed in a 2005 mudslide, Modarres's counsel argued the mudslide could not account for the failure to produce responsive documents since 2005.

The trial court stated that in early January, it could not see "any apparent justification for the defendants' failure to respond to the request for production and so sanctions were imposed. [¶] The plaintiff wanted $1,780. The court felt that that was a little high, and the court awarded $715." The court stated that it had ordered, inter alia, Thomas to "serve plaintiff's counsel with verified responses without objection and all responsive documents to request for production set two by no later than January 12th. [¶] There was no opposition to this motion. You filed no opposition. The tentative was posted. You read the tentative. You called the court and you submitted on the tentative. That makes this a binding order."

7

The trial court further stated: "I see no compliance with that order. I don't even see that the 700—whatever it was . . .—15 dollars has been paid. [¶] Under [Code of Civil Procedure section] 2031.300(c), if a party fails—'[i]f a party to whom an inspection demand is directed fails to serve a timely response to it, the following rules apply: (c)—well, first of all, let's go to (a). [¶] The party to whom the inspection demand was directed waives any objection to the demand, including one based on privilege or on the protection for work product. The court on motion may relie[ve] that party from its waiver on its determination that both [of] the following conditions are satisfied. And it relates to two conditions. [¶] The second one is the party's failure to serve a timely response was a result of mistake, inadvertence or excusable neglect. [¶] Then we go down to sub 'c.' It says, 'the court shall impose a monetary sanction under chapter 7 commencing with 2023.010, against any party, person or attorney who unsuccessfully makes or opposes a motion to compel a response to an inspection demand, unless it finds that the one subject to the sanctions acted with substantial justification or that other circumstances make the imposition of the sanctions unjust.' We had no response . . . from [you] to the motions. You raised no issues."

The court continued: "'[I]f the party then fails to obey the order compelling a response'—which is the order that I gave—'the court may make those orders that are just, including the imposition of an issue sanction and evidence sanction or a terminating sanction under chapter 7,['] which is [Code of Civil Procedure section] 2023.010. [¶] In lieu of or in addition to the sanctions, the court may impose a monetary sanction. Again, 2023.010. [¶] This is an old case. It was filed in March of 2007."

Noting that trial was set for January 25, the court concluded: "Today is January the 22nd. You have not complied with the order of the court, prejudicing the ability of the plaintiff[] to make ready and competently perform [her] duties in trial. [¶] I have no alternative, as I see it, for a lesser sanction than to grant the terminating sanction, and I grant it accordingly."

8

The court's signed order, dated February 5, 2010, stated, inter alia, that terminating sanctions were granted against certain defendants including Thomas, and that Thomas's answer had been stricken and his default entered.[1]

C.

*The Trial Court Grants Defendants' Motion for Relief from the Terminating Sanctions and Orders Defendants to Produce Responsive Documents by March 17, 2010; Defendants Do Not Do So.*

On February 1, 2010, defendants filed a motion for relief from the order granting terminating sanctions. Defendants' attorney argued the lack of compliance was his fault, there had already been discovery in the case, and the issuance of terminating sanctions was a disproportionate response to defendants' lack of compliance. On March 15, 2010, the court granted defendants' motion and ordered defendants to produce documents without objection by no later than March 17.

Defendants did not produce documents by March 17. Instead, in April 2010, the case was suspended because Crestridge Estates, LLC, filed for bankruptcy. In July 2010, following a remand of the matter to state court, this case was returned to the civil active list.

D.

*In July 2010, Modarres Appears Ex Parte Seeking Terminating Sanctions and Monetary Sanctions Against Defendants; the Trial Court Orders Modarres to File a Noticed Motion on the Subject and Set a Briefing Schedule; Modarres Files Motions for Terminating and Monetary Sanctions.*

In July 2010, Modarres applied ex parte seeking terminating sanctions and monetary sanctions in the amount of $2,208.75, against defendants, on the ground they still had not produced all responsive documents thereby impeding Modarres's ability to

---

[1] The trial court also issued terminating sanctions against 184 Diamond, LLC, Crestridge Estates, LLC, Dolphin Capital, LLC, and Slagter.

9

prepare for trial. The trial court denied the ex parte application but ordered Modarres to file a noticed motion requesting terminating and monetary sanctions by July 13, 2010; the court also set a briefing schedule and a hearing on the motion for August 30, 2010. Our record shows Modarres filed such a motion on July 13, but does not reflect its disposition.

On September 13, 2010, Modarres filed yet another motion for terminating sanctions and monetary sanctions in the amount of $4,415, against defendants.

E.

*The Trial Court Issues Terminating Sanctions Against Thomas;*
*the Court Strikes Thomas's Answer and Enters His Default.*

At the October 18, 2010 hearing on Modarres's most recent motion for terminating and monetary sanctions, defendants' counsel stated he would understand if the court believed Thomas "deserve[d] punishment." The court responded: "Counsel, I'm not here to make any value judgment, whatsoever. That's not the purpose of the bench, and that's not what I'm doing. There's been extreme failures to comply with the court orders. You have a trial of, I think it's January 18th, 2011, and there is no possibility that counsel can prepare adequately for it for the continued failure of Mr. Thomas to produce and comply with the orders that the court issues, not just the January 4th order."

After argument by counsel, the court stated, "[n]ow, terminating sanctions and monetary sanctions will be granted against Thomas only." The court explained: "Defendant Thomas has failed to obey the court's order of January 4, 2010, which compelled him to serve responses and documents without objection by no later than January 12, 2010. [¶] Since Thomas failed to obey this order and it is now October 18th, the court can impose both terminating and monetary sanctions pursuant to CCP 2031.300(c). [¶] Despite numerous chances over the course of the past eight

10

months, Thomas has not produced the following: [¶] One, bank statements for Washington Mutual account number . . . . [¶] Number two, Wells Fargo Bank statements from the period beginning three months prior to the opening of escrow of the 184 Diamond, LLC sale to January the 1st of '08. . . . [¶] And three, all deposit slips indicating the source of funds for all monies deposited in Thomas' account. . . . [¶] Thomas has produced statements from brokerage accounts, but these records do not evidence that the withdrawals from those accounts were the source of the funds that were deposited into Thomas' personal account."

In addition, the court stated: "The documents lodged with the court are not organized and have—and labeled according to the categories and the demands as required by [Code of Civil Procedure section] 2031.280(a). [¶] Thus, plaintiff's counsel will be compensated for part of her time that she spent in organizing the documents. A total of 19 hours on organizing the documents and bringing the motion, to this court's way of thinking, is not unreasonable. . . . [¶] So monetary sanctions are ordered in the amount of $4,415. That is the court's reasoning and that is the court's ruling. The answer will be stricken accordingly and default entered." The court's written order confirmed the issuance of terminating sanctions against Thomas and stated Thomas's answer was stricken and his default was entered.

III.

FOLLOWING TRIAL AS TO THE REMAINING DEFENDANTS AND THE DEFAULT PROVE-UP HEARING, THE TRIAL COURT FINDS DEFENDANTS LIABLE FOR BREACH OF CONTRACT AND FRAUD AND ENTERS JUDGMENT; DEFENDANTS APPEAL.

Following trial and the default prove-up hearing, the trial court's notice of ruling reflected the court's findings that defendants were liable to Modarres for breach of contract and fraud, and the court's intent to award Modarres $1 million in punitive damages against Thomas only.

11

In May 2013, judgment was entered, stating:

"Judgment is to be entered in the above captioned matter in favor of Plaintiff, FARAH MODARRES, and as against Defendants JOHN DAVID THOMAS aka DAVE THOMAS, an individual; 184 DIAMOND, LLC, a California limited liability company; CRESTRIDGE ESTATES, LLC, a California limited liability company; RANCHO PALOS VERDES HOLDING COMPANY, LLC, a California limited liability company; as follows:

"1. Compensatory damages for breach of contract in connection with the $182,000.00 loan in the amount of $182,000.00 plus interest at the contractual rate of 11% from March 15, 2005 until the judgment is entered, plus interest at the legal rate of 10% from the date judgment is entered until judgment is satisfied.

"2. Compensatory damages for breach of contract in connection with the $55,000.00 loan in the amount of $35,000.00 plus interest at the legal rate of 10% from the date of breach in May 2008 until the judgment is satisfied.

"3. Punitive damages in the amount of $1,000,000.00 plus post-judgment interest at the legal rate of 10% from the date judgment is entered until judgment is satisfied because Defendants made fraudulent promises without an intention to perform them as proven by clear and convincing evidence.

"4. Attorneys' fees and costs as provided by law plus interest at the legal rate of 10% from the date judgment is entered until the judgment is satisfied.

"5. Defendants shall be held jointly and severally liable for the judgment against them."

On July 3, 2013, defendants filed a notice of appeal (case No. G048684).[2]

_____

[2] Another named defendant, Rancho Palos Verdes Holding Company, LLC, was included in defendants' notice of appeal. The trial court did not make any finding of liability against that defendant following trial. In the court's modified final judgment entered in January 2014, Rancho Palos Verdes Holding Company, LLC, is not included among liable defendants.

IV.

DEFENDANTS FILE MOTIONS FOR A NEW TRIAL AND TO CORRECT OR VACATE
THE JUDGMENT; THE TRIAL COURT AMENDS THE JUDGMENT AND ENTERS A
FINAL JUDGMENT; DEFENDANTS FILE A SECOND NOTICE OF APPEAL.

In October 2013, the trial court denied defendants' motion for a new trial but granted their motion to correct or vacate the judgment because, as relevant to the issues on appeal, the court had intended to award punitive damages against Thomas only, not also against 184 Diamond, LLC—an intention that was not reflected in the May judgment. The trial court denied Modarres's motion for attorney fees because no such fees were contractually available.

In January 2014, the "Final Judgment" in the case was entered, which stated:

"After considering evidence at trial and the pleadings and filings in the case as well as the court's order of 10/15/2013, the court enters judgment as follows, to replace and supersede all previously entered judgments in this case:

"Case No.: 07 CC 03908

"The Court, having considered the testimony and evidence presented at trial, and whereas after considering the Pleadings, Closing Argument Briefs and Default Judgment Package submitted pursuant to California Code of Civil Procedure 585, makes the following judgment:

"The court finds in the above captioned matter in favor of Plaintiff, FARAH MODARRES, and as against Defendants JOHN DAVID THOMAS aka DAVE THOMAS, an individual; 184 DIAMOND, LLC, a California LLC, and CRESTRIDGE ESTATES, a California limited liability company; as follows:

"1. Compensatory damages for breach of cont[r]act in connection with the $182,000.00 loan in the amount of $182,000.00 plus interest at the contractual rate of

13

11% from March 15, 2005 until . . . the date judgment is entered and 10% from the date judgment is entered until judgment is satisfied.

"2. Compensatory damages for breach of contract in connection with the $55,000.00 loan in the amount of $35,000.00 plus interest at the legal rate of 10% from the date of breach in May 2008 until the judgment is satisfied.

"3. Punitive damages against Defendant John David Thomas only, in the amount of $1,000,000.00 plus post-judgment interest at the legal rate of 10% from the date judgment is entered until judgment is satisfied because Defendant[] John David Thomas made fraudulent promises without an intention to perform them as proven by clear and convincing evidence.

"4. Costs per memorandum of costs of $10,523.55 plus 10% post judgment interest from the date judgment is entered until the judgment is satisfied.

"5. Defendants shall be held jointly and severally liable for the judgment against them with the exception of punitive damages under item 3."

After the final judgment was filed, defendants filed a motion for a new trial. The motion was made on the grounds: "(1) there was no evidentiary basis for the awards of fraud or punitive damages; and (2) the amount of punitive damages are excessive." Modarres, in turn, filed a motion to correct or vacate the final judgment, arguing, "the original Judgment entered on May 30, 2013 was properly entered and erroneously amended on January 30, 2014. The amendments were erroneous because Defendants Rancho Palos Verdes Holding Company, LLC, Crestridge Estates, LLC, and John David Thomas had default entered against them prior to trial, had no standing to defend themselves, and each defendant was jointly and severally liable because the Court correctly considered the facts presented at trial as to 184 Diamond, LLC and the California Code of Civil Procedure § 585 packets as to the defaulted parties in signing the

14

judgment." Our record does not reflect the disposition, if any, of either defendants' motion for a new trial or Modarres's motion to correct or vacate the final judgment.[3]

On April 23, 2014, defendants filed a notice of appeal from the final judgment (case No. G050017). This court granted defendants' motion to consolidate the two appeals (case Nos. G048684 and G050017).

DISCUSSION

I.

THE TRIAL COURT DID NOT ABUSE ITS DISCRETION BY ISSUING TERMINATING SANCTIONS AGAINST THOMAS.

Defendants argue the trial court abused its discretion by striking Thomas's answer and entering his default as sanctions for misuse of the discovery process. Defendants argue Thomas's conduct did not rise to the level of discovery misuse, which warranted terminating sanctions; they do not challenge the monetary sanctions imposed on Thomas.

"Imposition of sanctions for misuse of discovery lies within the trial court's discretion, and is reviewed only for abuse." (*Doppes v. Bentley Motors, Inc.* (2009) 174 Cal.App.4th 967, 991 (*Doppes*).) The abuse of discretion standard has been described in these general terms: "The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason." (*Shamblin v. Brattain* (1988) 44 Cal.3d 474, 478.) A trial court exceeds the bounds of reason when, in light of the evidence and the

---

[3] In her respondent's brief, Modarres argues the trial court erred by modifying the original judgment to clarify that the punitive damages award was against Thomas only. She argues that under Code of Civil Procedure section 916, the case was stayed upon the filing of defendants' first notice of appeal in July 2013. Modarres has not filed an appeal in this case, and, thus, such issues raised in the respondent's brief are not properly before this court. We note, however, that our record does not reflect that a bond was posted at the time the notice of appeal was filed in July 2013. In addition, in granting defendants' motion to vacate or modify the judgment, the court modified the judgment to more accurately reflect the trial court's decision as set forth in its original notice of ruling.

15

applicable law, the court's decision was not a permissible option.  "The abuse of discretion standard . . . measures whether, given the established evidence, the act of the lower tribunal falls within the permissible range of options set by the legal criteria.  'The scope of discretion always resides in the particular law being applied, i.e., in the "legal principles governing the subject of [the] action . . . ."  Action that transgresses the confines of the applicable principles of law is outside the scope of discretion and we call such action an "abuse" of discretion.'"  (*Department of Parks & Recreation v. State Personnel Bd.* (1991) 233 Cal.App.3d 813, 831.)

"California discovery law authorizes a range of penalties for conduct amounting to 'misuse of the discovery process.'"  (*Doppes*, *supra*, 174 Cal.App.4th at p. 991.)  As relevant here, misuses of the discovery process include "[f]ailing to respond or to submit to an authorized method of discovery" (Code Civ. Proc., § 2023.010, subd. (d)); "[m]aking, without substantial justification, an unmeritorious objection to discovery" (*id.*, § 2023.010, subd. (e)); "[m]aking an evasive response to discovery" (*id.*, § 2023.010, subd. (f)); and "[d]isobeying a court order to provide discovery" (*id.*, § 2023.010, subd. (g)).

"[Code of Civil Procedure s]ection 2023.030 authorizes a trial court to impose monetary sanctions, issue sanctions, evidence sanctions, or terminating sanctions against 'anyone engaging in conduct that is a misuse of the discovery process.'  [¶] . . . [¶] As to terminating sanctions, Code of Civil Procedure section 2023.030, subdivision (d) provides:  'The court may impose a terminating sanction by one of the following orders:  [¶] (1) An order striking out the pleadings or parts of the pleadings of any party engaging in the misuse of the discovery process.  [¶] (2) An order staying further proceedings by that party until an order for discovery is obeyed.  [¶] (3) An order dismissing the action, or any part of the action, of that party.  [¶] (4) An order rendering a judgment by default against that party.'"  (*Doppes*, *supra*, 174 Cal.App.4th at pp. 991-992.)

16

In *Doppes*, a panel of this court explained that in selecting the appropriate sanction, a trial court "should consider both the conduct being sanctioned and its effect on the party seeking discovery," and should tailor the sanction to fit the harm caused by the misuse of the discovery process. (*Doppes*, *supra*, 174 Cal.App.4th at p. 992.) The trial court cannot impose sanctions for misuse of the discovery process as a punishment. (*Ibid.*) "The discovery statutes evince an incremental approach to discovery sanctions, starting with monetary sanctions and ending with the ultimate sanction of termination. 'Discovery sanctions "should be appropriate to the dereliction, and should not exceed that which is required to protect the interests of the party entitled to but denied discovery."' [Citation.] If a lesser sanction fails to curb misuse, a greater sanction is warranted: continuing misuses of the discovery process warrant incrementally harsher sanctions until the sanction is reached that will curb the abuse. 'A decision to order terminating sanctions should not be made lightly. But where a violation is willful, preceded by a history of abuse, and the evidence shows that less severe sanctions would not produce compliance with the discovery rules, the trial court is justified in imposing the ultimate sanction.' [Citation.]" (*Ibid.*, fn. omitted.)

The trial court did not abuse its discretion by striking Thomas's answer and ordering his default as a sanction for misuse of the discovery process. The history of this case shows the trial court employed an incremental approach to the imposition of sanctions. After Modarres first moved to compel Thomas's document production, the court ordered Thomas to produce the documents by a specific date and issued limited monetary sanctions. After Thomas failed to produce the documents by the court-ordered date and failed to pay the monetary sanctions, the court issued terminating sanctions against Thomas, but shortly thereafter granted Thomas's motion for relief from those terminating sanctions; the court, however, also ordered Thomas to produce the documents. After several efforts by Modarres to seek court intervention to compel the document production, the court issued terminating sanctions.

17

Defendants do not dispute Thomas failed to produce all the responsive documents and do not address Thomas's repeated failure to comply with the court's orders compelling such production, notwithstanding the looming threat of further sanctions. (Code Civ. Proc., § 2023.010, subd. (g).) Thomas's conduct was not inadvertent. Our record does not show whether Thomas ever paid the increasing amount of monetary sanctions awarded against him for his discovery misuses.

When the trial court conducted the October 2010 hearing on Modarres's last motion to compel Thomas's document production, the court's permissible range of options included the imposition of the next level increment of sanctions—terminating sanctions. Other than terminating sanctions, the only option available to the trial court was to impose issue or evidentiary sanctions against Thomas. In light of the very limited record on appeal designated by defendants and argument in their appellate briefs, we have no way of evaluating whether issue or evidentiary sanctions against Thomas would have been an appropriate remedy to address his misuse of the discovery process. We also have no way of determining whether any such sanctions would have been the functional equivalent of terminating sanctions.

As terminating sanctions were within the trial court's permissible range of options, the court did not abuse its discretion by striking Thomas's answer and ordering entry of his default as a sanction for misuse of the discovery process.

II.

### WE MODIFY THE JUDGMENT TO STRIKE THE PUNITIVE DAMAGES AWARD AND REMAND FOR A NEW DEFAULT PROVE-UP HEARING ON THE AMOUNT OF PUNITIVE DAMAGES THAT SHOULD BE AWARDED.

Defendants do not challenge Modarres's general entitlement to punitive damages; they challenge the manner and amount in which such damages were awarded.[4]

---

[4] Appellate review of a default judgment is limited to jurisdiction, defects in pleadings, and claims of excessive damages. (See *Uva v. Evans* (1978) 83 Cal.App.3d 356, 362-363.)

18

Specifically, defendants contend the portion of the final judgment awarding $1 million in punitive damages must be stricken because (1) Modarres failed to present sufficient evidence of Thomas's financial condition at the time of trial and entry of final judgment; (2) the award is unconstitutionally excessive in amount; and (3) the trial court erroneously concluded Thomas and 184 Diamond, LLC, were jointly and severally liable for fraud, but awarded punitive damages against Thomas only.

The permissible amount of punitive damages is constrained both by federal due process and by California state law. "A court determining whether a punitive damages award is excessive under the due process clause must consider three guideposts: '(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases. [Citation.]' [Citation.]" (*Bullock v. Philip Morris USA, Inc.* (2011) 198 Cal.App.4th 543, 558, quoting *State Farm Mut. Automobile Ins. Co. v. Campbell* (2003) 538 U.S. 408, 418.) Under California law, the defendant's financial condition is "an essential factor" in setting the amount of punitive damages. (*Simon v. San Paolo U.S. Holding Co., Inc.* (2005) 35 Cal.4th 1159, 1185.)

Defendants challenge the amount of punitive damages as excessive on several grounds, one of which, we conclude, has merit. Defendants assert the punitive damages award is not supported by "contemporary evidence" of Thomas's net worth. "A reviewing court cannot make a fully informed determination of whether an award of punitive damages is excessive unless the record contains evidence of the defendant's financial condition." (*Adams v. Murakami* (1991) 54 Cal.3d 105, 110 (*Adams*).) "Absent such evidence, a reviewing court cannot make an informed decision whether the amount of punitive damages is excessive as a matter of law." (*Id.* at p. 118.) The plaintiff has the burden of proof of a defendant's financial condition. (*Id.* at p. 120.)

19

The *Adams* court did not prescribe a rigid standard for measuring a defendant's ability to pay punitive damages, and stated it could not conclude, based on the record before it, "that any particular measure of ability to pay is superior to all others or that a single standard is appropriate in all cases." (*Adams*, *supra*, 54 Cal.3d at p. 116, fn. 7.) Net worth is often described as "the critical determinant of financial condition"; however, "there is no rigid formula and other factors may be dispositive especially when net worth is manipulated and fails to reflect actual wealth." (*County of San Bernardino v. Walsh* (2007) 158 Cal.App.4th 533, 546.)

Appellate courts have interpreted *Adams* to require the plaintiff to provide a balanced overview of the defendant's financial condition; a selective presentation of financial condition evidence will not survive scrutiny. (See *Baxter v. Peterson* (2007) 150 Cal.App.4th 673, 676; *id.* at p. 681 [record "silent with respect to . . . liabilities" is insufficient]; *Kelly v. Haag* (2006) 145 Cal.App.4th 910, 916-917; *Robert L. Cloud & Associates, Inc. v. Mikesell* (1999) 69 Cal.App.4th 1141, 1151-1153; *Lara v. Cadag* (1993) 13 Cal.App.4th 1061, 1063-1065.) Courts may not infer sufficient wealth to pay a punitive damages award from a narrow set of data points, such as ownership of valuable assets or a substantial annual income.

In her respondent's brief, Modarres summarizes the evidence that she presented of Thomas's assets, cash, liabilities, and net worth, which included a signed document entitled "Personal Financial Statement As of January 31, 2005" that was contained in the default judgment packet submitted to the trial court on January 9, 2013. She argues: "First, Thomas' Personal Financial Statement shows that he had a total of twenty-one million dollars ($21,000,000.00) in real estate investments consisting of ownership interests in five separate entities. . . . This included $13,000,000.00 in 'Crestridge LLC/RPV Holdings,' $1.4 million in River Central LLC, $2,500,00[0].00 in the San Jacinto Partnerships (1 and 2), and $4,100,000.00 in RPV Holdings LLC 'various properties.' . . . Similarly, the document shows that Thomas has $225,000.00 in personal

20

property.  Further, the Personal Financial Statement also contains a breakdown of Thomas' liabilities of $860,000.00."

Defendants do not contend the evidence presented by Modarres was inaccurate; defendants argue it is too old.  In their opening brief, defendants argue: "[T]he record contains no contemporary evidence of Thomas's net worth.  The court can take judicial notice of the fact that in 2008 and thereafter, real estate values plummeted, financing became unavailable, and developers like Thomas lost their shirts in many cases.  An award of punitive damages after 2008 should not be based upon an assessment of net worth from several years before the crash."  (See *Kelly v. Haag*, *supra*, 145 Cal.App.4th at p. 915 ["A punitive damages award is based on the defendant's financial condition *at the time of trial*."  (Italics added.)].)

We agree with defendants that Modarres's evidence was not sufficient as it failed to show Thomas's financial condition at the time of the default prove-up hearing and thus did not provide "meaningful evidence of [his] financial condition" (*Adams*, *supra*, 54 Cal.3d at p. 109).

We need not, however, reverse the part of the judgment awarding punitive damages.  Modarres is entitled to recover punitive damages; the only question is the amount.  In such a situation, we may strike the award of punitive damages and remand for a new trial on the amount of punitive damages alone, based on evidence of Thomas's financial condition at the time of the new default prove-up hearing.  (See *Tomaselli v. Transamerica Ins. Co.* (1994) 25 Cal.App.4th 1269, 1286; *Lara v. Cadag*, *supra*, 13 Cal.App.4th at p. 1065; *Washington v. Farlice* (1991) 1 Cal.App.4th 766, 777.) Modarres may conduct discovery, including third party discovery, and may subpoena documents and witnesses to be available at the new default prove-up hearing for the purpose of establishing Thomas's financial condition, and, in addition, we will direct the trial court to enter an order permitting such discovery.  (Civ. Code, § 3295, subd. (c).)

21

Because we strike the punitive damages award in the amount of $1 million and remand for a new default prove-up hearing on the amount of punitive damages that should be awarded, we do not reach Thomas's other arguments challenging the amount of punitive damages award.

REQUEST FOR JUDICIAL NOTICE

The week before oral argument, Thomas filed a request for judicial notice asking this court to take judicial notice "that on May 6, 2013, the Superior Court in and for the County of Los Angeles, entered judgment against Mr. John D. Thomas, appellant herein, in the amount of $22,100,154.44 in the matter entitled *First-Citizens Bank & Trust Company v. John David Thomas, et al.* No. BC434802." Thomas argues, "[t]he fact that a huge judgment was issued against Mr. Thomas before the trial of this matter and before the entry of judgment against him as a defaulted party is relevant to the appeal, because this information would give the lie to any notion that Mr. Thomas had sufficient net worth to be subjected to a punitive damages award of one million dollars." In view of our disposition remanding the case for retrial of the amount of punitive damages, we deny the request for judicial notice.

DISPOSITION

Modarres is entitled to punitive damages. The judgment is modified to strike the award of punitive damages in the amount of $1 million. The matter is remanded for a new default prove-up hearing only on the issue of the amount of punitive damages. We direct the trial court to issue an order under Civil Code section 3295,

22

subdivision (c), permitting Modarres to conduct discovery into Thomas's current financial condition.  As modified, the judgment is affirmed.  Modarres shall recover costs on appeal.



FYBEL, J.

WE CONCUR:


RYLAARSDAM, ACTING P. J.


ARONSON, J.